## Mary Hodgdon v. Mt. Mansfield Company, Inc.

[624 A.2d 1122]

No. 91-346

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.),** **Specially Assigned**

Opinion Filed November 6, 1992

*David J. Mullett* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Plaintiff-Appellant.

*David L. Cleary* of *David L. Cleary Associates*, Rutland, and *P. Kevin Connelly* of *Connelly, Sheehan & Moran*, Chicago, Illinois, for Defendant-Appellee.

*Edwin L. Hobson* of *Linton & Hobson* and *Richard Cassidy*, Chair, Vermont Employment Lawyers Association, Burlington, for amicus curiae Vermont Employment Lawyers Association.

*Jeffrey L. Amestoy*, Attorney General, and *Robert Appel*, Assistant Attorney General, Montpelier, for amicus curiae Office of the Attorney General.

**Gibson, J.** Plaintiff Mary Hodgdon appeals the superior court's decision that defendant Mt. Mansfield Company, Inc., did not discriminate against her on the basis of sex or handicap and did not invade her privacy when it fired her from her position as a chambermaid. Plaintiff also appeals the trial court's decision to grant defendant's motion for a trial before the court on the handicap-discrimination claim. We affirm the superior court's decision regarding plaintiff's claim of invasion of privacy and reverse the court's rulings on the sex- and handicap-discrimination claims. We also hold that parties are entitled to trial by jury on claims for legal damages brought under the Fair Employment Practices Act (FEPA), but we affirm the decision to have trial by court in this case because plaintiff did not request such damages.

Defendant operates a ski resort in Stowe. Plaintiff began working for defendant as a chambermaid in August 1986. She has not had natural upper teeth since 1981, but had a set of dentures made before she went to work for defendant. She did not wear them, however, because they hurt her.

During the fall of 1987, defendant hired Marguerite Pearson as its executive housekeeper. Pearson was responsible for

housekeeping schedules and standards, and reviewing staff performance. She participated in discussions on upgrading the image of the resort in order to obtain a "four-star" rating. Patty Clark, her supervisor, mentioned that the appearance of members of the housekeeping staff, including plaintiff, needed improvement, and Pearson communicated this concern to her staff members.

Pearson asked plaintiff to volunteer for layoff in October 1987, but assured her that she would be rehired in six weeks. In the meantime, however, management personnel decided that plaintiff would not be allowed to return to work without dentures, despite her neat and clean appearance and her good work record. On November 24, Pearson sent plaintiff a letter informing her that Mt. Mansfield was concerned about upgrading "the way employees are seen by the public" and that "employees will be expected to have teeth and to wear them daily to work."

Plaintiff called Pearson upon receipt of the letter and explained that she had dentures but had not been able to wear them because they did not fit. She asked to be allowed to return to work so that she could earn enough money to purchase a new set. Pearson told plaintiff that she could not come back to work without dentures, but that she would hold plaintiff's job open until December 21. The company fired plaintiff when she did not report to work on that date.

Plaintiff filed suit, claiming that defendant violated FEPA, 21 V.S.A. §§ 495–496, by firing her because of a perceived handicap and because of her sex. Plaintiff also brought claims for invasion of privacy, intentional infliction of emotional distress and wrongful discharge. The trial court granted defendant's motion for summary judgment on the sex-discrimination and invasion-of-privacy claims and defendant's motion for trial before the court on the handicap-discrimination charge. Plaintiff dismissed the infliction-of-emotional-distress and wrongful-discharge claims, and the case proceeded to trial solely on the handicap-discrimination claim.

Plaintiff claims that the trial court erred by (1) granting defendant's motion for trial by court on the handicap-discrimination claim, (2) granting defendant's motion for summary judgment on the sex-discrimination and invasion-of-privacy claims, and (3) finding, as a matter of law, that plaintiff is not a handicapped individual under FEPA.

## I.

Plaintiff first argues that, to the extent there were factual issues to resolve, she was entitled to trial by jury on her sex- and handicap-discrimination claims brought under FEPA. In response, defendant argues that because FEPA did not exist at the time the Vermont Constitution was adopted, and because the statute does not provide for trial by jury, plaintiff has no right to a jury trial in her FEPA actions.

Chapter I, Article 12 of the Vermont Constitution provides: "That when any issue in fact, proper for the cognizance of a jury is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred." This provision guarantees a right to jury trial to the extent that it existed at common law at the time of the adoption of the constitution in 1793. *State Department of Taxes v. Tri-State Industrial Laundries, Inc.*, 138 Vt. 292, 297, 415 A.2d 216, 220 (1980). The right to trial by jury is not, however, restricted to those common-law causes of action recognized by the Vermont courts in 1793. Rather, we look at the nature of the action and whether it is the type of controversy that would have been tried by a jury under common law at that time. *Plimpton v. Town of Somerset*, 33 Vt. 283, 291–92 (1860). As we stated in *Plimpton*:

> All the rights, whether then or thereafter arising, which would properly fall into those classes of rights to which by the course of the common law the trial by jury was secured, were intended to be embraced within this article. Hence it is not *the time* when the violated right first had its existence, nor whether the statute which gives rise to it was adopted before or after the constitution that we are to regard as the criterion of the extent of this provision of the constitution; but it is the nature of the controversy between the parties, and its fitness to be tried by a jury according to the rules of the common law that must decide the question.

*Id.* (emphasis in original).

The United States Supreme Court has applied a similar test in construing the Seventh Amendment to the federal con-

stitution,[1] preserving the federal right to trial by jury. In *Curtis v. Loether*, 415 U.S. 189 (1974), the Court held that the Seventh Amendment guaranteed the right to trial by jury in a housing discrimination action brought under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3612, in which the plaintiff sought actual and punitive damages. 415 U.S. at 195. The Court declared that "[a]lthough the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time." *Id.* at 193. The term "common law" in the Seventh Amendment means those suits in which *legal* rights or relief were determined as opposed to *equitable* rights or relief. *Id.* Because the plaintiff in *Curtis* sought actual and punitive damages, the traditional form of relief granted by courts of law, the Court determined that she was enforcing "legal rights" within the meaning of the Seventh Amendment and was entitled to a trial by jury. *Id.* at 195.

Thus, we look to the nature of a FEPA suit and the forms of relief available under that Act to determine whether there is a right to trial by jury. FEPA makes it unlawful for an employer "to discriminate against any individual because of [her] . . . sex . . . or against a qualified handicapped individual." 21 V.S.A. § 495(a)(1). It provides that any person aggrieved by a violation of the Act may bring an action to seek "*damages* or equitable relief, including restraint of prohibited acts, restitution of wages or other benefits, reinstatement, costs, reasonable attorney's fees and other appropriate relief." 21 V.S.A. § 495b(b) (emphasis added).[2] The meaning of this statute is plain on its face; it is clear that the Legislature intended to include legal

---

[1] The Seventh Amendment provides:
 In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

[2] Defendant maintains that this Court should not address the issue of damages because the trial court's disposition of the FEPA counts precluded it from considering the type of relief available under the Act. While in general we do not decide issues that have not been addressed below, in this case we find it necessary to resolve the issue concerning damages in order to address the jury trial issue.

damages among the remedies available under FEPA.[3] Because this "is the traditional form of relief offered in the courts of law," *Curtis*, 415 U.S. at 196, we hold that parties claiming such damages under FEPA are entitled to trial by jury pursuant to Chapter I, Article 12.

Defendant argues that the right to a jury under the Vermont Constitution does not apply to statutory actions but only to common-law causes of action. It maintains that because FEPA does not grant a right to jury trial, there is no such right in actions under the Act. The petitioner in *Curtis* advanced the same argument, but the Court held that "[t]he Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." 415 U.S. at 194. Similarly, this Court has found that "[t]he [Vermont] [C]onstitution was intended to provide for the future as well as the past, to protect the rights of the people . . . whether those rights then existed by the rules of the common law, or *might from time to time arise out of subsequent legislation.*" *Plimpton*, 33 Vt. at 291 (emphasis added). Thus, we conclude that the right to trial by jury under the Vermont Constitution is not limited to causes of action recognized at common law in 1793.

Defendant also argues that we should adopt the federal rule, under which there was no right to trial by jury in a Title VII action, because FEPA is patterned on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. See *Graff v. Eaton*, 157 Vt. 321, 323 n.2, 598 A.2d 1383, 1384 n.2 (1991) ("The consensus has been that there is no right to trial by jury under Title VII because the remedy it provides — reinstatement and award of back pay — is essentially equitable."). The decisions denying trial by jury under the federal employment discrimination law, however, were based on the remedy provided under Title VII prior to its amendment in 1991. See *id.*; *Curtis*, 415 U.S. at 197. Unlike FEPA, Title VII relief was essentially equitable in nature until 1991, when Congress amended Title VII

---

[3] The court in *Buckley v. American International Adjustment Co.*, No. 91-242 (D. Vt. March 26, 1992), was incorrect to the extent that it determined that compensatory damages are not available under FEPA.

extending the relief available to include compensatory and punitive damages. See Civil Rights Act of 1991, Pub. L. No. 102–166, § 102, 105 Stat. 1071, 1072 (1991) (codified at 42 U.S.C. § 1981a). In 1981, the Vermont Legislature extended FEPA remedies to include "damages" by an amendment in which it provided for private actions under the Act. See 21 V.S.A. § 495b(b). Thus, we are not inclined to follow pre-1991 Title VII case law on the jury trial issue. Accordingly, to the extent that factual issues are in dispute, the parties to an action under FEPA are entitled to trial by jury when the plaintiff requests legal damages.

Finally, defendant argues that, even if claims under FEPA may be tried by jury, the right to a jury trial still turns on whether the complaint seeks legal or equitable relief. Defendant maintains that because plaintiff in this case sought solely equitable relief in her FEPA claims, she is not entitled to trial by jury on these claims. We agree.

■ Although plaintiff maintains that she seeks to recover legal damages in her handicap- and sex-discrimination claims, in her complaint, she requests "back pay, restitution of wages, and other benefits including salary increases, costs, reasonable attorney fees and such other relief as the court deems just and proper." Because plaintiff lists only equitable forms of relief in this request, we find that "other relief that the court deems just and proper" cannot be construed to include legal damages. Therefore, we conclude that plaintiff is not entitled, on the present state of her complaint, to trial by jury on her claims under FEPA.

## II.

■ Plaintiff also claims that the trial court erred in granting defendant's motion for summary judgment on the sex-discrimination and invasion-of-privacy claims. On appeal of an order granting summary judgment, we apply the same standard as the trial court. *Kelly v. Town of Barnard*, 155 Vt. 296, 299, 583 A.2d 614, 616 (1990). To prevail on summary judgment, the moving party has the burden of establishing that no genuine issues of material fact exist. In determining if there is a genuine issue of material fact, we give the opposing party the benefit of

all reasonable doubts, and we regard all properly supported allegations presented by the opposing party as true. *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99–100 (1990).

## A.

Plaintiff's sex-discrimination claim asserts that defendant violated FEPA by requiring her to wear dentures as a condition of employment while no such requirement was imposed on male employees. She argues that summary judgment on this claim was improper on two grounds. First, plaintiff contends that there were material facts in dispute. We agree.

The trial court applied the shifting-burden analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), and set out by this Court in *State v. Whitingham School Board*, 138 Vt. 15, 19, 410 A.2d 996, 998 (1979). Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of disparate treatment. This burden is a relatively light one. *Whitingham School Board*, 138 Vt. at 19, 410 A.2d at 998; see *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (plaintiff must prove that she applied for available position for which she was qualified, but was rejected under circumstances which give rise to inference of unlawful discrimination). Establishing a prima facie case essentially raises a presumption of unlawful discrimination. *Burdine*, 450 U.S. at 253.

Under *McDonnell Douglas*, once plaintiff has established a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802. Shifting the burden to the employer to rebut the prima facie case serves to frame the factual issue. *Burdine*, 450 U.S. at 255. If the employer meets its burden, the burden then shifts back to the plaintiff to prove that the employer's proffered reason is a pretext. *Id.* at 256.

In this case, the trial court ruled that plaintiff had established a prima facie case by showing that she was terminated because she did not wear dentures while two male employees working in the maintenance department were not required to wear dentures. It concluded, however, that defendant had rebutted the prima facie case by showing its employment decision

was based on nondiscriminatory considerations. The court found that defendant legitimately imposed higher "grooming" standards for the housekeeping employees because employees in this department have direct contact with guests of the resort while those in the maintenance department have no similar contact. Consequently, the burden shifted back to plaintiff, and the court concluded that plaintiff failed to demonstrate that defendant's nondiscriminatory reason was mere pretext. Thus, on cross motions for summary judgment, the court ruled for defendant.

■ Plaintiff disputes the court's finding regarding guest contact, maintaining that employees of both departments have similar guest contact. We agree that plaintiff's evidence indicated that one of the maintenance workers who had lost his teeth had contact with the public to the same extent as plaintiff. According to plaintiff, he met and spoke with guests in the parking lot and while shoveling the driveway. He also helped guests when their cars were stuck in the snow. In addition, plaintiff presented evidence indicating that other "grooming" standards, such as those regarding hair length, were not enforced against male employees. Taking plaintiff's allegations as true, we conclude that summary judgment for defendant was improper. The evidence indicates there is a factual dispute regarding employee-guest contact that is central in this case. We, therefore, hold that the trial court erred in granting summary judgment on the sex discrimination claim.

We also note that in reaching the decision to grant summary judgment in favor of defendant, the trial court considered subsequent acts of the employer. The court concluded that "the fact that shortly after plaintiff's termination Ms. Pearson refused to hire a male without teeth for the housekeeping staff shows that the defendant's action was not based on sex discrimination." We do not find this evidence determinative. The fact that defendant later refused to *hire* another man without teeth may be relevant to defendant's intent at the time of plaintiff's termination. It does not, however, show that its decision to *fire* the female employee without teeth while continuing to employ two men without teeth was not sex discrimination.

■ Although we reverse the summary judgment on the sex-discrimination claim because there is an issue of material fact,

we also address plaintiff's second claim of error because it is likely to arise again on remand. See *In re Illuzzi*, 159 Vt. 155, 158, 616 A.2d 233, 235 (1992) (on grounds of judicial economy, Court addressed issue likely to arise on remand). Plaintiff contends that the trial court incorrectly allocated burdens of proof between the parties. While the court applied the standard set out in *McDonnell Douglas*, 411 U.S. at 802–04, plaintiff maintains that, because she presented direct evidence that gender played a motivating factor in defendant's decision to fire her, the court should have allocated burdens according to *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989).[4]

FEPA is patterned on Title VII of the Civil Rights Act of 1964, and the standards and burdens of proof under FEPA are identical to those under Title VII. *Graff v. Eaton*, 157 Vt. at 323, 598 A.2d at 1384. Both *McDonnell Douglas* and *Price Waterhouse* were actions brought under Title VII. We adopted the *McDonnell Douglas* framework under FEPA in 1979, see *Whitingham School Board*, 138 Vt. at 19, 410 A.2d at 998, but adopted the *Price Waterhouse* framework in 1991, after the decision by the trial court herein. See *Graff*, 157 Vt. at 324, 598 A.2d at 1384.

The *Price Waterhouse* framework is invoked when the plaintiff initially establishes that her sex played a motivating part in an employment decision. If the plaintiff makes this initial showing, then the burden shifts to the employer and remains with the employer who "may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." 490 U.S. at 244–45 (footnote omitted). The employer's burden under this framework is no different from establishing an affirmative defense. *Id.* at 246.

█ We adopted the *Price Waterhouse* framework under FEPA in *Graff*, but concluded that, under the state statute, it is for the jury to determine initially whether the plaintiff's evi-

---

[4] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), was superseded by the Civil Rights Act of 1991, Pub. L. No. 102–166, § 107, 105 Stat. 1071, 1075 (1991) (codified at 42 U.S.C. § 2000e-2), which provides that the complaining party establishes unlawful employment practice by demonstrating that race, color, religion, sex, or national origin was a motivating factor in the employment decision, even if other factors also motivated the decision.

dence establishes that her sex was a motivating factor in the defendant's employment decision. 157 Vt. 326–27, 598 A.2d at 1385. If the plaintiff fails to make this initial showing, then the *McDonnell Douglas* analysis is applicable. Nevertheless, unless the trial court finds that the plaintiff's evidence is insufficient to make this preliminary showing as a matter of law, under Vermont law, the issue must go to the jury. *Id.*

## B.

Plaintiff argues that summary judgment was improper on the invasion-of-privacy claim. She asserts that the trial court usurped the jury's role by deciding as a matter of law that the letter defendant sent — informing plaintiff that she could not return to work without dentures — was not a substantial intrusion that could be highly offensive to a reasonable person. We disagree.

■■ The right of privacy is the right to be let alone. Restatement (Second) of Torts § 652A (1977). The Restatement of Torts 2d identifies four forms of invasion of privacy. Only one, the intrusion upon seclusion, does not require publicity of a person's private interests or affairs. *Id.* § 652B. To state a cause of action for intrusion upon seclusion, the plaintiff must allege "an intentional interference with [her] interest in solitude or seclusion, either as to [her] person or as to [her] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." *Id.* Moreover, the intrusion must be substantial. *Id.*

■ We agree with the trial court that the single letter from defendant threatening termination, although perhaps insensitive under the circumstances in this case, was insufficient to constitute an invasion of privacy as a matter of law. There was simply no substantial intrusion and no error in the trial court's ruling. See *DeAngelo v. Fortney*, 357 Pa. Super. 127, 131, 515 A.2d 594, 595 (1986) (one telephone call and one mailing from contractors soliciting business insufficient to establish invasion of privacy); *Corder v. Champion Road Machinery Int'l Corp.*, 283 S.C. 520, 525–26, 324 S.E.2d 79, 82 (Ct. App. 1984) (no invasion of privacy where employer told plaintiffs they would be

fired unless they withdrew workers' compensation claims and then mailed them each a letter of termination).[5]

### III.

Plaintiff also argues that the trial court erred by ruling, as a matter of law, that she is not a handicapped person under FEPA. FEPA prohibits employers from discriminating against a qualified handicapped individual, unless a bona fide occupational qualification so requires. 21 V.S.A. § 495(a)(1). The first issue in any FEPA handicap-discrimination claim is whether the plaintiff is a "handicapped individual" and thus within the protection of the Act. A "handicapped individual" is defined as a person who:

> (A) has a physical or mental impairment which substantially limits one or more major life activities;
>
> (B) has a history or record of such an impairment; or
>
> (C) is regarded as having such an impairment.

21 V.S.A. § 495d(5). Plaintiff in this case argues that she is a handicapped individual under the third category because she claims she was regarded as having a "physical . . . impairment which substantially limits one or more major life activities." The Act defines these terms as follows:

> "Physical or mental impairment" means
>
> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; or endocrine. . . .

*Id.* § 495d(7)(A).

> "Substantially limits" means the degree that the impairment affects an individual's employability. A handicapped individual who is likely to experience difficulty in securing, retaining, or advancing in employment would be considered substantially limited.

---

[5] *Corder v. Champion Road Machinery Int'l Corp.*, 283 S.C. 520, 324 S.E.2d 79 (Ct. App. 1984), was overruled by S.C. Code Ann. § 41-1-80 (prohibiting employer retaliation against employee where employee files workers' compensation claim).

*Id.* § 495d(8).

"Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing . . . [and] working. . . .

*Id.* § 495d(9).

 Finally, a person "[i]s regarded as having such an impairment" when she:

(A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer as constituting such a limitation;

(B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(C) has none of the impairments defined in subdivision 7(A) of this section but is treated by an employer as having such an impairment.

*Id.* § 495d(11). Plaintiff maintains that she has a physical impairment that does not substantially limit major life activities but that defendant treated her as though she had such a limitation. We agree that plaintiff's lack of upper teeth is a physical impairment within the meaning of the act because it is a cosmetic disfigurement and an anatomical loss affecting the musculoskeletal and digestive systems. See *id.* § 495d(7)(A). Plaintiff does not, however, regard herself as handicapped. Rather, she claims that, by firing her solely because she has no upper teeth, defendant treated her as though she were handicapped.

Defendant contends that it does not regard plaintiff as handicapped, but simply fired her because she did not comply with the requirement that she wear dentures. The superior court agreed, concluding that defendant perceived plaintiff as a woman who would not wear her dentures and simply told her that she would have to wear them as a condition of employment, nothing more. The court's decision rested on the underlying conclusion that plaintiff's failure to retain this particular job did not constitute being limited in a major life activity, namely, working, and, consequently, defendant's failure to retain her did not indicate that it regarded her as handicapped. We believe the court's reasoning is flawed.

The definition of "handicapped individual" under FEPA is identical to the definition under the federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796i, which prohibits federally funded employers from discriminating against handicapped individuals who are otherwise qualified for the job in question. Compare 21 V.S.A. § 495d(5) with 29 U.S.C. § 706(7)(B). Moreover, the Rehabilitation Act is governed by regulations almost identical to the other definitions in § 495d of FEPA. See, e.g., 45 C.F.R. § 84.3 (defining "handicapped person," "physical or mental impairment," "major life activities," "is regarded as having an impairment"). Because the Vermont Legislature patterned our handicap-discrimination statute on federal legislation, we look to federal case law for guidance in construing the definitions at issue. See *Graff*, 157 Vt. at 323–25, 598 A.2d at 1384–85 (relying on case law construing Title VII and federal age-discrimination statute in construing FEPA in sex-discrimination claim).

In *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273 (1987), the Court discussed the purpose of including persons *regarded as handicapped* within the protection of the Rehabilitation Act. By extending coverage to those persons who are regarded as handicapped, Congress intended, in part, to prohibit discrimination based on a physical impairment, where that impairment only affects major life activities as a result of attitudes of others toward the impairment. *Id.* at 282–83. The Court noted:

> The Senate Report provides as an example of a person who would be covered under this subsection "a person with some kind of visible physical impairment which in fact does not substantially limit that person's functioning." Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment.

*Id.* (quoting S. Rep. No. 93–1297, at 64) (citation and footnote omitted).[6] Moreover, the regulations promulgated by the De-

_____

[6] The *Arline* Court provides two examples from the Congressional Record of discrimination based on the attitudes of others toward a visible physical

partment of Health and Human Services include "cosmetic disfigurement" among the physical impairments covered by the Act. 45 C.F.R. § 84.3(j)(2)(i)(A). As the *Arline* Court acknowledged, a cosmetic disfigurement cannot substantially limit any of the listed major life activities except the ability to work, and even in this regard, only as a result of the attitudes of others toward the impairment. 480 U.S. at 283 n.10.[7]

We believe this case presents precisely the type of visible physical impairment discussed in *Arline*. Plaintiff has a physical impairment, lack of upper teeth, that does not substantially limit her in any major life activity. Nonetheless, defendant treated her as if she had such a limiting condition because it decided that a visible physical impairment rendered plaintiff unfit to fill a position in which she had some contact with defendant's guests. Defendant, thus, treated plaintiff as if her ability to work were substantially limited by her impairment. Cf. *Chico Dairy Co., Store No. 22 v. West Virginia Human Rights Commission*, 181 W. Va. 238, 247, 382 S.E.2d 75, 84–85 (1989) (employer who regarded employee with sunken and hollow eye socket "unsavory and unacceptable" to deal with customers does not establish employee as handicapped individual under state statute that did not include "is regarded as" clause of federal Rehabilitation Act).

We distinguish the instant case from those relied on by defendant on two grounds. In one category of cases, the plaintiffs had no physical or mental impairments. See, e.g., *de la Torres v. Bolger*, 610 F. Supp. 593, 597 (N.D. Tex. 1985) (left-handed

___

impairment. In the first case, a child with cerebral palsy was excluded from public school because his teacher believed that his physical appearance "'produced a nauseating effect'" on classmates. *Arline*, 480 U.S. 273, 282 n.9 (1987) (quoting 117 Cong. Rec. 45974 (1971)). In the second case, a woman with arthritis was denied a job solely because college trustees believed that "'normal students'" should not be exposed to her. *Id.* (quoting 118 Cong. Rec. 36761 (1972)). The legislative history indicates that Congress intended to prohibit such discrimination when it extended the Rehabilitation Act to cover those individuals *regarded as handicapped* although not substantially limited in any major life activity.

[7] FEPA also lists a "cosmetic disfigurement" under the definition of physical impairment, 21 V.S.A. § 495d(7)(A), and includes "the attitudes of others toward such impairment" as capable of substantially limiting a life activity. *Id.* § 495d(11)(B).

postal worker fired for slowness had no statutorily recognizable impairment); *Tudyman v. United Airlines*, 608 F. Supp. 739, 746 (C.D. Cal. 1984) (avid body builder who voluntarily exceeded the maximum weight for flight attendant had no physical impairment). These cases were brought under the federal counterpart to the third prong of subsection (11), § 495d(11)(C), under which a plaintiff having no physical or mental impairment must show that the employer treated the employee as having such an impairment. The third prong is not at issue in this case. Plaintiff, here, asserts her claim under the first prong, § 495d(11)(A): she has an impairment; the employer treated it as substantially limiting her ability to work.

The other category of cases defendant relies on concludes that the plaintiffs simply failed to meet the unique qualifications required for the job at issue. See, e.g., *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir. 1989) (applicant for position of New York City police officer unable to meet unique qualifications because of "poor judgment, irresponsible behavior and poor impulse control" could not be considered a handicapped person under the Act); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986) (utility systems repairer, fired because of his fear of heights, had no impairment causing significant barrier to employment); *Elstner v. Southwestern Bell Tel. Co.*, 659 F. Supp. 1328, 1343 (S.D. Tex. 1987), *aff'd*, 863 F.2d 881 (5th Cir. 1988) (knee problem only affected plaintiff's ability to climb telephone poles and thus only disqualified him from positions requiring pole climbing). The employers in these cases regarded the employees' impairments as preventing them from performing a single job because the job involved a particular activity, such as climbing telephone poles.

Here, however, defendant regards plaintiff as unfit to be seen by customers. This is not a qualification unique to the position from which she was fired, but, rather, is to regard plaintiff as substantially limited in her ability to work. Cf. *E.E. Black, Ltd. v. Marshall*, 497 F. Supp. 1088, 1102 (D. Haw. 1980) (employer who perceived applicant with congenital back anomaly as poor risk for heavy labor regarded employee as substantially limited in his ability to work).

Finally, defendant argues that this case simply involves enforcement of a grooming standard. We believe defendant's

characterization of its policy is incorrect. Requiring an employee to conceal a visible physical impairment as a condition of employment is not equivalent to requiring an employee to be clean or wear a uniform.

■■ In determining that plaintiff is a handicapped individual under FEPA, we make no decision regarding the factually dissimilar cases relied on by defendant. We decide only that when an employer makes an employment decision based on its belief that an employee with a visible physical impairment is not fit to work in a position involving any customer contact, then the employer has treated the impairment as substantially limiting the employee's ability to work. In such circumstances, the employee is a handicapped individual under FEPA. The employee must still show that she is a "[q]ualified handicapped individual . . . capable of performing the essential functions of the job." 21 V.S.A. § 495d(6). And the employer may still show that a particular physical condition is a bona fide occupational qualification for the particular job.

*Reversed and remanded, except for the rulings on the invasion-of-privacy claim and the right to jury trial, which are affirmed.*

**Peck, J.**, dissented without opinion.