## Anita BECKMANN v. EDSON HILL MANOR, Inc., et al.

[764 A.2d 1220]

No. 99-155

November 14, 2000. Plaintiff Anita Beckmann appeals a Lamoille Superior Court judgment for defendants Edson Hill Manor, Inc., Eric Lande, Billy O'Neal, Nicole Bourassa, and Peg White, in a discriminatory retaliation action. Plaintiff argues that the trial court erred because it failed to consider whether Edson Hill Manor's head chef and other employees retaliated against plaintiff by subjecting her to further harassment after she complained about sexual harassment. We affirm.

The trial court found the following facts. From September 1994 to March 1995, plaintiff was employed by defendant Edson Hill Manor, Inc. as a member of the waitstaff in the dining room and resident caretaker at the inn. At all times relevant to plaintiff's complaint, Eric Lande was president and majority stockholder of the corporations that own Edson Hill Manor, Inc. Billy O'Neal, general manager of the Manor, hired plaintiff, and had supervisory responsibility over the waitstaff and the kitchen staff. Nicole Bourassa, dining room manager, held supervisory responsibility over the waitstaff. Matt Delos was the head chef with supervisory responsibility over the kitchen staff, and Peg White was the sous chef. Each of these individuals was personally involved in the operation of the Manor or the restaurant on a regular basis.

Plaintiff claimed that chef made derogatory comments to her, including: "Did you get laid today?" and, "You know, you've got a really nice ass." Chef denied making these remarks. The trial court noted, however, that chef signed a letter of apology to plaintiff, in which he con-ceded culpability. He then recanted this letter in his trial testimony, saying that he signed it to end the litigation. Defendant sous chef also denied hearing all of the alleged remarks, except the first, to which she promptly responded to chef that it was "none of his business."

Plaintiff testified that she responded immediately to chef's second comment, saying, "That's called sexual harassment." She further testified that within ten minutes sous chef and a kitchen assistant joked about sexual harassment and refused to answer plaintiff's questions about the menu, instead replying: "We better not talk to you because anything we might say, you might accuse us of sexual harassment." Plaintiff also testified that chef refused to answer her questions about the menu as well. She testified that this atmosphere continued for weeks after the incident.

Plaintiff left defendants' employ in March 1995, and brought suit. Plaintiff's complaint alleged intentional infliction of emotional distress, sexual harassment, retaliation for her complaints of sexual harassment, wrongful interference with her ability to seek gainful employment elsewhere, and wrongful withholding of tips. The trial court dismissed the claims for intentional infliction of emotional distress and wrongful withholding of tips. In its opinion, the court found that plaintiff failed to prove by a preponderance of the evidence that: (1) she was sexually harassed by her coworkers; (2) she was the victim of retaliatory constructive discharge; or (3) the Manor interfered in any way with her ability to seek gainful employment elsewhere.

Plaintiff concedes that the trial court's findings of fact and conclusions of law may be fairly construed to deny her claim that defendants reduced her work hours in retaliation for her sexual harassment complaint. Plaintiff argues, however, that the trial court failed to consider "whether or not the further harassment of Ms.

Beckmann by fellow employees and Chef Delos constituted retaliation in violation of Vermont's Fair Employment Practices Act, 21 V.S.A. § 495(a)(5), and Title VII, 42 U.S.C. 2000e-3(a)."

Specifically, plaintiff contends that the court erred by addressing "the issue of co-worker harassment solely in the context of her sexual harassment claim and not in the legally distinct context of her retaliation claim." Plaintiff asserts that the court's discussion of plaintiff's relationship with her co-workers as hostile work environment rather than retaliation demonstrates that the court did not adequately address her retaliatory co-worker harassment claim. We disagree, and determine that the trial court's consideration of plaintiff's claims and evidence was adequate to support its findings. See *Secretary v. Irish*, 169 Vt. 407, 419, 738 A.2d 571, 580 (1999) (court's fundamental duty is to resolve issues before it and make findings necessary to support its conclusions).

The distinction plaintiff makes on appeal between a hostile work environment claim based on co-worker sexual harassment and a legally distinct claim of a hostile work environment created by co-workers in retaliation for her sexual harassment complaint is difficult to discern in her pleadings. Plaintiff's appellate argument more directly alleges that defendants violated Vermont's Fair Employment Practices Act (FEPA) and Title VII of the Civil Rights Act of 1964 (Title VII) by retaliating against her after she complained about sexual harassment to management through further harassment by chef and her co-workers.

The standards and burdens of proof to be applied under FEPA are the same as those under Title VII. *Carpenter v. Central Vermont Med. Ctr.*, 170 Vt. 565, 566, 743 A.2d 592, 594 (1999) (mem.). This Court has applied the three-step burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802-04 (1973), to FEPA claims. *Carpenter*, 170 Vt. at 566, 743 A.2d at 594-95. Under *McDonnell Douglas*, plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of retaliation. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 159, 624 A.2d 1122, 1127 (1992); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A prima facie case for retaliatory discrimination requires the plaintiff to show that: (1) she was engaged in protected activity, (2) her employer was aware of that activity, (3) she suffered adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *Gallipo v. City of Rutland*, 163 Vt. 83, 92, 656 A.2d 635, 642 (1994). At the prima facie case stage, the plaintiff's burden is a relatively light one. *Carpenter*, 170 Vt. at 566, 743 A.2d at 595.

Once the plaintiff has established a prima facie case, the employer must "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. *Hodgdon*, 160 Vt. at 159, 624 A.2d at 1127 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer meets this burden of production, the burden then shifts back to the plaintiff to prove by a preponderance of evidence that the employer's given reason is a pretext and not the true reason for the employment decision. *Id.*; *Burdine*, 450 U.S. at 256. If the plaintiff does not satisfy this burden, then the employer is entitled to judgment.

Assuming plaintiff's statement to chef "[t]hat's called sexual harassment" occurred, it satisfies both the first and second elements of her prima facie case. First, reporting the alleged harassment constituted a protected activity. See *Gallipo*, 163 Vt. at 92, 656 A.2d at 642. Second, complaining to chef, a supervisory employee, established notice to her employer. *Levendos v. Stern Entertainment, Inc.*, 909 F.2d 747, 751-52 (3d Cir.

1990). The trial court did not consider chef a member of management in its analysis. Rather, its discussion focused on the dining room manager, who was plaintiff's immediate supervisor, and the general manager.

In fact, chef was a supervisory employee, with "greater influence with management regarding the responsibilities and performance of the wait staff." Defendants did not have a sexual harassment policy, but even under its policy on workplace harassment, employees were "asked to report the incident to management." Although chef was the alleged perpetrator of both plaintiff's sexual harassment and co-worker retaliation complaints, he was a member of management. Further, the fact that chef was a perpetrator in this case does not prevent his knowledge of his own conduct from being imputed to the employer.

Next, plaintiff must show that she suffered adverse employment action. Plaintiff contends that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). In *Richardson*, the plaintiff presented evidence to show that after her complaint of sexual harassment became known, her co-workers allegedly put manure in her parking space, hair in her food, and scratched her car. *Id.* at 446-47. The court held that this was sufficient to state a prima facie claim of retaliatory harassment. However, as the court in *Richardson* noted, "not every unpleasant matter short of [discharge or demotion] creates a cause of action for retaliatory discharge." *Id.* at 446 (internal quotations omitted).

In this case, plaintiff alleges that chef and other co-workers continued to harass her in retaliation for her complaint by refusing to speak to her, joking about sexual harassment and complaining to management about her. The trial court noted that it was "undisputed that plaintiff had an antagonistic relationship with [chef] and other members of the kitchen staff." For example, the court found that chef complained to management about plaintiff's performance shortly after he started working with plaintiff. In addition, chef and dining room manager complained to the general manager about plaintiff's performance, including her persistent tardiness, her failure to provide the kitchen staff with instructions regarding when guests were ready to have their meals prepared, and that she took food to the wrong table and made mistakes on tickets. Members of the housekeeping staff also complained to management about plaintiff's behavior, including her personal use of the washers and dryers, her use of profanity, and that she blocked their access to the laundry with her car. The court thus found that friction existed overall between plaintiff and the kitchen staff.

Plaintiff relies upon many of the same incidents to support both her co-worker retaliatory harassment and hostile work environment claims. In addition to her retaliatory constructive discharge claims, on which the trial court made specific findings, plaintiff alleges three separate incidents to support her retaliatory harassment claim. The first consisted of co-workers "respond[ing] to her questions about the menu by stating that they would not speak to her because she might accuse them of sexual harassment." The second was a sexual innuendo made by chef, and the third was chef's refusal on one occasion to recite the menu slowly enough for plaintiff to take notes. These three incidents are not sufficiently severe to constitute an adverse employment action. Indeed, the court stated it "cannot conclude that plaintiff was subjected to a hostile work environment because of any complaints she allegedly made regarding sexual harassment."

Finally, plaintiff must demonstrate a causal connection between the protected

activity and the adverse employment action. Although the trial court stated that "the timing of the events supports an inference that there is a causal link between her complaint to management and the allegedly retaliatory action," it ultimately found that plaintiff failed to prove "that the kitchen staff treated her in a hostile manner because she objected to or complained of sexual harassment."

The court's opinion, as a whole, demonstrates that it evaluated the evidence critical to plaintiff's retaliatory co-worker harassment claims. Although it would have been preferable for the court to have organized its findings of fact and conclusions of law in a manner that more closely tracked plaintiff's claim, the organization of factual and legal conclusions is not as critical as the determination that these findings and conclusions were actually considered and adjudicated. See *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986) (remand unnecessary "if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision").

*Affirmed.*