Robertson v. Griswold Offset Printing, Inc., Docket No. 235-5-03 Wmcv (Wesley, J., May 3, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WINDHAM COUNTY, SS.

STANLEY ROBERTSON,
            Plaintiff,

                                                                WINDHAM SUPERIOR COURT
                                                                DOCKET NO: 235-5-03Wmcv

GRISWOLD OFFSET PRINTING, INC.,
            Defendant.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Based on allegations of age discrimination, this suit includes one count for wrongful

discharge and one count for violation of the Vermont Fair Employment Practices Act (FEPA),

21 V.S.A. § 495. It is currently before the Court on cross motions for summary judgment.

Defendant Griswold Offset Printing, Inc. (hereafter "Griswold Offset") moves for judgment

contending that Plaintiff Robertson is not entitled to a wrongful discharge claim as an at-will

employee and has failed to establish a claim for age discrimination. Mr. Robertson opposes this

motion and seeks judgment with regard to three of Griswold Offset's affirmative defenses. For

reasons set out below, the Defendant's Motion is **GRANTED** and the Plaintiff's is **DENIED**.

**Factual Background**

The following factual background is drawn from evidence submitted with the pending

motions, as well as statements of fact drawn from Plaintiff's Complaint and Defendant's Answer.

1

Except where they are identified as a party's opinion or where otherwise noted, the facts are not disputed.

Allan Griswold is the sole owner of the defendant corporation. He hired Stanley Robertson to work in the printing company's offset bindery department in April, 1994. At that time, Mr. Robertson was 58 years old and already had considerable experience in the printing field. He was hired without a contract and without benefit of any employment manual or written employment policies. Mr. Robertson continued to work in Griswold Offset's bindery department over the course of the next eight years. He received wage increases from time to time, and at no time did Griswold Offset provide him with any negative performance reviews or otherwise document dissatisfaction with his work.

At some point prior to the alleged discrimination, the printing industry as a whole, and Griswold Offset in particular, experienced a business slow down. Attrition aided Defendant in containing business costs but Mr. Griswold eventually decided to consolidate staff numbers by reducing the number of employees in the bindery from three to two. As one of two employees who remained in the bindery, Mr. Robertson was required to assume additional duties related to shipping and receiving. In Mr. Griswold's opinion, Mr. Robertson did not perform his new duties satisfactorily although there is no indication that he ever shared this opinion with Mr. Robertson. Nevertheless, without conceding an overall lack of qualification, Mr. Robertson notes that he was not as good at his receiving and shipping duties as he was at his regular bindery tasks. In what Mr. Griswold describes as an effort to compensate for Mr. Robertson's limitations, a third worker, Leroy Hescock, was again posted to the bindery.

On or about April 15, 2002, Mr. Griswold told Mr. Robertson that, due to anticipated

work slow downs, he would be laid off for the summer. At 66 years, Mr. Robertson was then the oldest employee at Griswold Offset. Mr. Griswold instructed Mr. Robertson to check in toward the end of summer to determine when he might resume working. Mr. Griswold also opined to Mr. Robertson that since Mr. Robertson was receiving social security benefits and could collect unemployment benefits, Mr. Robertson would not be hurt by the lay off. Mr. Griswold advised Mr. Robertson to play a lot of golf and keep in touch. Later, when asked to explain these comments, Mr. Griswold stated that they were made solely with the intention of comforting Mr. Robertson.

In the mid-July of that same summer, Mr. Griswold hired Geoff Hart to work in the bindery. Mr. Hart was approximately 30 years old and had previously been employed at Griswold Offset. Mr. Robertson concedes that Mr. Hart was better at shipping and receiving than he was though he also contends that Mr. Hart was not as skilled as he was at bindery tasks. Around the time that Mr. Hart was hired, Mr. Hescock was terminated for unauthorized absences from work. Mr. Griswold claims that he hired Mr. Hart to replace Mr. Hescock but there is some evidence Mr. Hart was hired almost two weeks before Mr. Hescock was fired. In mid-August, Griswold Offset also advertised for a color press assistant, an opening for which it eventually hired a second color press operator. There is no allegation that Mr. Robertson was qualified for the latter position.

Meanwhile, when Mr. Robertson checked in the middle of August, he was told work was still slow and was not given any direct information about his future employment status. Later, in early September, Mr. Robertson wrote to inquire about his work status and to request outstanding vacation pay. Soon thereafter he received a check from Griswold Offset for vacation pay but no

3

invitation to return to work.[1]

## Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c). When reviewing the motion, the Court must give the benefit of all reasonable doubts and inferences to the nonmoving party. Select Design, Ltd. v. Union Mutual Fire Insurance Co., 165 Vt. 69 (1996). Summary judgment is mandated where, after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to the case. Poplaski v. Lamphere, 152 Vt. 251 (1989). The party resisting a motion for summary judgement may not rest upon mere allegations or denials of the adverse party's pleading to establish this showing, but must set forth specific admissible facts showing that there is a genuine issue for trial. V.R.C.P. 56(e). Mello v. Cohen, 168 Vt. 639, 641(1998).

## Defendant's Motion for Summary Judgment

### A. Wrongful Discharge

It is well established in Vermont that "an employment contract for an indefinite term is an 'at will' agreement, terminable at any time, for any reason or for none at all." Ross v. Times Mirror, Inc., 164 Vt. 13, 18(1995)(citation omitted). This rule of contract construction may be overcome by evidence to the contrary only "if the employer has, by express language or clear implication, foreclosed his right to terminate except for good cause." Benoir v. Ethan Allen, Inc., 147 Vt. 268, 270 (1986)(citations omitted). In the instant case, Plaintiff does not claim that

---

[1]The parties dispute whether this check also included money for wages or for holiday pay.

4

modification altered his at-will employment status. Therefore, as a general matter, his employment was terminable with or without good cause. Lacking an underlying contract, Mr. Robertson is also unable to claim an implied covenant of good faith and fair dealing. Ross, 164 Vt. at 23(declining to recognize implied covenant of good faith and fair dealing where employment is at-will and employee claims a right to tenure). Accordingly, Mr. Robertson's claim that he was wrongfully discharged because Griswold Offset laid him off indefinitely and without benefit of an explicit termination is unsupported by law.

As to his claim that he was wrongfully discharged on account of age discrimination, the Vermont Supreme Court has recognized an exception to the general nature of at-will employment if an employer's alleged actions contravene clear and compelling public policy. Jones v. Keogh, 137 Vt. 562, 564 (1979). The Vermont court has determined that age discrimination is an example of conduct which is so clearly "contrary to our society's concern for providing equity and justice that there is a clear and compelling public policy against it." Payne v. Rozendaal, 147 Vt. 488, 494(1986)(recognizing wrongful discharge action based on age discrimination). Payne involved incidents that occurred before FEPA was amended to include age discrimination and the Court referred to the later amendment as confirmation of the existence of a public policy against age discrimination. Id. at 492. It also referred to the plaintiff's inability to access the new statutory remedy in explaining its decision to recognize the wrongful discharge count. Id. at 495 ("To fail to recognize a common law cause of action when there is a clear and compelling public policy against age discrimination and when there is no state statutory provision providing an avenue of relief for the plaintiffs would be to shirk our responsibility to recognize and act upon societal changes as they affect and help develop the law of this state as interpreted by its courts.")

5

Defendant does not suggest that Plaintiff's reliance on wrongful discharge should be restricted now that the statutory remedy is available, though Plaintiff does not propose any different analysis for his claim of common-law wrongful discharge than is now established by the statutory framework. Thus, the Court adopts the FEPA analysis for reviewing the count for wrongful discharge and it will rise or fall with the FEPA claim.

### B. Age Discrimination under FEPA

FEPA makes it unlawful for an employer to discriminate against an individual because of his age:

(a) It shall be unlawful employment practice, except where a bona fide occupational qualification requires persons of a particular race, color, religion, national origin, sex, sexual orientation, ancestry, place of birth, age, or physical or mental condition:
(1) For any employer, employment agency or labor organization to discriminate against any individual because of race, color, religion, ancestry, national origin, sex, sexual orientation, place of birth, or age or against a qualified individual with a disability;

21 V.S.A. § 495 (a)(1). The standards and burdens of proof under FEPA are the same as those applied under Title VII of the United States Civil Rights Act. Robertson V. Mylan Laboratories, Inc., 2004 VT 15, ¶ 16, 176 Vt. 356, 363.

Where employment discrimination is alleged, one of two frameworks for analysis applies as developed by caselaw. Where the plaintiff initially establishes evidence that an impermissible characteristic played a motivating role in an employment decision, the Price Waterhouse framework applies; see, Hogdon v. Mt. Mansfield, 160 Vt. 150, 161(1993). Derived from Price Waterhouse v. Hopkins, 490 U.S. 228(1989), this test shifts the burden of proof to the employer

6

who "may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [the impermissible characteristic] to play such a role." Hogdon, 160 Vt. at 161(citation omitted). To invoke this burden shifting analysis, the plaintiff's evidence of discriminatory intent must be direct. Robertson, 2004 VT 15, ¶ 18, 176 Vt. at 364 .

Though probative of reliance on unlawful characteristics, an employer's resort to stereotypical remarks is not *per se* proof that an unpermitted characteristic was a motivating factor in a particular employment decision. Graff v. Eaton, 157 Vt. 321, 327(1991) citing Price Waterhouse, 490 U.S. at 250. In Graff, the Court found sufficient direct evidence for a jury to determine that gender had played a motivating factor in an employer's decision not to rehire based on the following statement to the plaintiff, "Nancy, if I give you flextime, then every woman in state government with small children will want flextime." Id. at 327. In the current case, Mr. Robertson points to Mr. Griswold's comments about social security and golf as similar evidence of discriminatory intent. While the Court acknowledges the materiality of these comments, it concludes that they do not represent direct evidence that Mr. Griswold's decision to lay off Plaintiff was actually motivated by Mr. Robertson's age. The Court does not doubt that Mr. Griswold's comments's reflect preconceived ideas about Mr. Roberts's needs and interests based on age. However, rather than directly explicating the motivation underlying Mr. Griswold's decision, the comments focus on the impact of the employment decision on Mr. Robertson. Indeed, Mr. Griswold maintains that however clumsy the effort, his comments were meant to assuage the inevitable hurt feelings attending the layoff. Because the comments do not refer directly to Mr. Griswold's motivation, the Court considers them only circumstantial evidence as to wrongful intent, requiring the application of the McDonnell Douglas framework instead.

7

Inspired by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792(1973), this framework places an initial burden on the plaintiff to establish a prima facie case of disparate treatment. <u>Robertson</u>, 2004 VT 15, ¶ 24, 176 Vt. at 366. The evidentiary burden on plaintiff is relatively light at this stage and is meant to screen out only the most patently meritless claims. <u>Id</u>., 176 Vt. at 367. Generally, a prima facie case is established when the plaintiff demonstrates that:(1) he was in the protected group; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) the circumstances permit an inference of discrimination. <u>Id</u>. at ¶ 25, 176 Vt. at 367 (citations omitted). In this case there is no dispute that Mr. Robertson is a member of a protected group by virtue of his age and that he suffered an adverse employment action.[2] Although Defendant disputes that Mr. Robertson was qualified for a position in a two-person bindery, giving Plaintiff the benefit of the doubt and reasonable inferences, there is sufficient indicia that Mr. Robertson was at least minimally qualified for the bindery position. Likewise, from those comments made on April 15th and evidence that Griswold Offset was willing to hire the younger Mr. Hart as a third hand in the bindery rather than calling Mr. Robertson back, a fact finder considering Mr. Griswold's comments alone could draw a reasonable inference of discrimination.

Under <u>McDonnell Douglas</u>, once the plaintiff establishes a prima facie case, a presumption of discrimination arises. <u>Robertson</u>, 2005 VT 15, ¶ 26, 176 Vt. at 367. This shifts

---

[2]With regard to adverse action, it makes no difference whether Mr. Robertson was laid off or terminated. Clearly he lost the opportunity to work at his job after April 2002, an opportunity which has not since reappeared.

the burden to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id.(citations omitted). The employer's burden at this stage is only one of production. Id. Griswold Offset easily meets its burden of production by asserting that Plaintiff was laid off because he could not meet the full demands of the broader tasksharing required by the work force reduction. Plaintiff's concession that there were industry wide work shortages supports Defendant's proffer, as does his acknowledgment that Mr. Hart had better qualifications in certain skill areas where his own were lacking.

Once the employer meets its burden of production, to survive summary judgment, the plaintiff must prove that the employer's proffered reason is a mere pretext for discrimination. Id. at ¶ 27, 176 Vt. at 367. Contending that Griswold Offset's explanation is false, Mr. Robertson points to Mr. Griswold's failure to communicate either any disappointment with Mr. Robertson's qualifications or his intentions to downsize the bindery until well after Mr. Robertson was laid off as evidence consistent with a discriminatory intent. The Court notes that Mr. Griswold was not under an obligation to share his workplace evaluations or business plans with Mr. Robertson and cannot conclude Defendant's silence on these matters is indicative of discriminatory intent. Mr. Griswold's explanation for his own comments is not inconsistent with legitimate business interests even if it failed to comprehend the serious nature of the job loss Mr. Robertson had to contend with. Mr. Robertson also points to decisions which added a third worker to the bindery before Mr. Robertson was laid off, and once again when Mr. Hart was hired, as evidence that there was no serious intention to downsize. However, Plaintiff concedes that there was an industry-wide economic downturn and he does not seriously dispute Mr. Griswold's claim that the bindery staffing pattern was altered in response to the need for improved efficiency. Neither

9

does he contest that Mr. Hart was better qualified at some tasks which were important in the reorganized bindery. While there is evidence that Griswold Offset did not keep bindery employees to an entirely consistent number, there is no dispute that Defendant reduced the positions in the bindery for all but two brief times, once before and once after April 2002. Finally, Mr. Robertson claims no pervasive pattern of discrimination, nor links Mr. Griswold's stereotyping comments to any other conduct, verbal or otherwise, that supports the claim of age discrimination.

Summary judgment for a defendant may be properly granted where a plaintiff fails to refute an employer's description of its legitimate nondiscriminatory intentions.

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Id. at ¶ 32, 176 Vt. at 371 (applying standard for judgment as a matter of law to summary judgment) citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148(2000).

Although Mr. Robertson has successfully established a prima facie case of discrimination under the McDonnell Douglas framework, Griswold Offset has responded with strong evidence of a legitimate business purpose which is disputed by Mr. Robertson without benefit of a factual foundation. Indeed, Plaintiff has conceded most of the factual underpinning of Griswold Offset's defense. In light of Plaintiff's concessions about general work shortages, the business legitimacy of the bindery reorganization, and his admitted shortcomings in certain necessary workplace

10

skills, there is ample evidence that Mr. Griswold's decision to suspend Mr. Robertson's employment was based on legitimate business interests. The Court "may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom." <u>Robertson,</u> 2004 VT 15, ¶ 35, 176 Vt. at 372 (declining to review unchallenged evidence of business restructuring). Though Plaintiff yearns to place the stereotyping remarks before a jury, no reasonable factfinder could conclude otherwise than that Defendant's decision to lay off Plaintiff was based on "unquestionably reasonable" criteria . <u>Smith v. City of Jackson</u>, _____ U.S. _____ (slip op at 14, Mar. 30, 2005). See also, <u>Adams v. Green Mountain R.R.</u> 2004 VT 75 (2004)(jury verdict for retaliatory discharge unsupported by any evidence of pretext undercutting the demonstrably legitimate reasons offered by employer)..

Accordingly, the Court concludes that Griswold Offset is entitled to judgment as a matter of law on the issue of age discrimination both arising under FEPA and as a claim for wrongful discharge.

## **ORDER**

Wherefore, the Court **GRANTS** Defendant's Motion for Summary Judgment and, having done so, it **DENIES** Plaintiff's Motion for Summary Judgment.

Dated at Brattleboro, Vermont, this _____ day of March, 2005.

_____
John P. Wesley
Presiding Judge

11