John M. BUNEVITH, Plaintiff,

v.

CVS/PHARMACY, Defendant.

Civil Action No. 95–40027–NMG.

United States District Court,
D. Massachusetts.

May 16, 1996.

John M. Bunevith, pro se.

John D. McNally, Kelly, Pessolano & Withers, P.C., Springfield, MA, for CVS Pharmacy.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiff in the above-entitled matter, John M. Bunevith ("Bunevith"), filed the instant action against defendant, CVS/Pharmacy ("CVS"), alleging employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Pending before this Court is the opposed motion of CVS, filed pursuant to Fed. R.Civ.P. 56(c), for summary judgment. For the following reasons, CVS' motion will be allowed.

## I. FACTUAL BACKGROUND

Bunevith was employed by CVS from September 14, 1987 until July 28, 1993. His duties included management of retail stores, and supervision of employees at those stores. During that period, Bunevith developed "positive emotional feelings" toward Ms. Chris Marquis, an employee under his supervision.

In January, 1993, Bunevith alleges that he was given a series of directives which he felt were harmful to his store and to the company. He allegedly requested the opportunity to apply for an "out of store" position, but was denied that opportunity. Bunevith believes that this denial was a factor contributing to his future depressive disorder.

In February, 1993 Bunevith expressed his feelings towards Ms. Marquis. Bunevith submits a March 24, 1994 memorandum authored by CVS' Human Resources Manager, which stated that Bunevith told Ms. Marquis

that he would desert his wife to engage in a relationship with Ms. Marquis.

On April 8, 1993, Bunevith met with Janice M. Bretz–Howe, a licensed social worker, regarding extreme anxiety related to stress at work. Specifically, Bunevith complained of an inability to focus at work. The "Outpatient Treatment Update Report" filled out by the social worker indicates that Bunevith had no history of inpatient or outpatient treatment for his condition. The "target date for improvement" for this condition was May 15, 1993. There is no evidence that Bunevith showed this report to CVS before his termination.

Bunevith's supervisor learned of his February, 1993 advances towards Ms. Marquis on April 14, 1993. In an affidavit submitted by Bunevith's supervisor, he declares that although Ms. Marquis clearly stated to Bunevith that she wanted no non-work related contact with him, he continued to harass her. His supervisor further averred that Ms. Marquis perceived his continued harassment as a threat, and refused to return to work. Bunevith counters by alleging that between February 1993 and April 14, 1993, Ms. Marquis harassed him to the point where he feared to work with her, but he does not allege that he informed CVS of such harassment.

Bunevith and his supervisor met to discuss the situation on April 19, 1993. On April 23, 1993, Bunevith met with Dr. Mark O. Cutler, who diagnosed him with a "major depressive disorder," and prescribed an antidepressant. The only record of this "diagnosis" is in the form of an unsworn letter from Dr. Cutler, dated April 24, 1995, which stated as follows:

> To whom it may concern:
>
> I saw John Bunevith for a Psychiatric Evaluation on 4/23/93 and found him to be suffering from a Major Depressive Disorder. I then saw him for Medication Management on 4/30/93, 5/6/93, 5/13/93, and 6/23/93. He received the antidepressant Pamelor [dosage illegible].

Bunevith alleges that 1) he requested, and received, a five-week leave of absence on April 20, 1993, 2) he informed his supervisor of his mental/emotional illness before em-

barking on the leave of absence, and 3) the leave of absence was for medical purposes. CVS neither admits nor denies that the leave of absence was for medical purposes, but in a June 1, 1993 Personnel Change of Status form, CVS stated that Bunevith was "returning from medical leave."

On May 15, 1993, Dr. Cutler cleared Bunevith to return to work on June 1, 1993. On May 27, 1993, Bunevith met with his supervisor and a district supervisor to discuss his return from his leave of absence. Bunevith believes that the meeting was intentionally scheduled during his medical leave, and he objected to the timing, as well as to the district supervisor's presence. He alleges that 1) the meeting was conducted in a threatening manner and was intended to coerce his resignation, 2) he refused an offer to separate by mutual agreement, and 3) as a result his return to work was made contingent upon his satisfying unrealistic and discriminatory conditions.

Bunevith was thereafter transferred to another store and demoted to assistant manager. He retained his same salary but was told that if he was not promoted to manage a store within six months, his salary would be adjusted downward to the assistant manager level.

On July 10, 1993, Bunevith called a coworker, and informed her that he intended to contact Ms. Marquis. On July 12, 1993, Bunevith's new supervisor learned about that telephone call, and warned him not to contact Ms. Marquis. On an "Employee Counseling Card" dated July 12, 1993, Bunevith's supervisor stated that:

> [i]t has come to our attention that [Bunevith] phoned the help desk and spoke to Kim regarding personal issues. Our concern is that [Bunevith] continues to dwell on the past rather than looking ahead and moving forward with his career. This type of behavior is counter productive [sic] to what we set out to accomplish. This calls into question [Bunevith's] desire to become a store manager. While we are following up on every opportunity that presents itself our main goal is to determine if [Bunevith] is capable & willing to once again take the responsibilities of running a store.

Bunevith argues that this statement demonstrates CVS' concern that his illness would affect his employment.

On July 28, 1993, the regional sales manager learned that Bunevith had made unwanted advances towards another employee under his supervision at his new worksite. Later that day, CVS informed Bunevith that his employment was terminated because of his repeated, unacceptable and inappropriate behavior in violation of a company policy prohibiting sexual harassment. *See* CVS Personnel Policy and Procedures, Number 2.07, Section 1.5. Sexual harassment is defined in that policy as

> sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when ... such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.

*Id.,* Section 1.1.

When confronted by CVS regarding the new act of sexual harassment, Bunevith denied any wrongdoing. Bunevith argues that his summary termination by CVS denied him due process, because CVS' policy states that "[e]mployees who believe they have been unjustly charged with sexual harassment can defend themselves verbally or in writing at any stage of the investigation." *Id.,* Section 4.5. When Bunevith was terminated, CVS issued to him a manually cut paycheck, which, Bunevith argues, indicates a decision to terminate him before he had appeared to face the charges.

## II. PROCEDURAL HISTORY

Bunevith filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was a victim of discrimination by CVS. On November 30, 1994, the EEOC dismissed his charge because he was not protected by the ADA. In its notice of dismissal, the EEOC notified Bunevith of his right to bring suit against CVS on his allegations of discrimination based on disability. Bunevith filed the instant action in this Court on February 14, 1995. CVS filed the pending Motion for Summary Judgment on October 6, 1995.

## III. DISCUSSION

### A. *Standard of Review*

■ Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in his favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

■ With respect to a motion for summary judgment, the burden is on the moving party to show that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). If the movant satisfies that burden, it shifts to the non-moving party to establish the existence of a genuine material issue. *Id.* In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e).

### B. *Legal Analysis*

The evaluation of Bunevith's employment discrimination claim follows the familiar three-step, burden-shifting framework introduced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

#### 1. *Bunevith's Prima Facie Case*

■ The Court must first consider whether Bunevith has established a *prima facie* case of discrimination. *Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995). Bunevith bears the burden of proving each element of his

*prima facie* case. *Cook v. Dep't of Mental Health, Retardation, and Hosps.*, 10 F.3d 17, 22 (1st Cir.1993).

A "qualified individual" entitled to protection under the ADA is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). If an individual is so qualified, he cannot be discharged from employment on account of that disability. 42 U.S.C. § 12111(a).

■ To establish a *prima facie* case of discriminatory discharge in violation of the ADA, Bunevith must allege that he: 1) suffered from a disability, 2) was otherwise qualified to perform the essential functions of his employment, with or without reasonable accommodation, 3) was discharged, and 4) was replaced by a non-disabled person. *See, e.g., Nedder v. Rivier College*, 908 F.Supp. 66, 74 (D.N.H.1995); *Sherman v. Optical Imaging Systems, Inc.*, 843 F.Supp. 1168, 1181 (E.D.Mich.1994). *But see Patterson v. Downtown Medical and Diagnostic Center, Inc.*, 866 F.Supp. 1379 (M.D.Fla.1994).

Because both parties agree that Bunevith was terminated, the third element of his *prima facie* case for disability discrimination is not in dispute. This Court considers the three remaining elements *seriatim*.

### a. *Bunevith's Disability*

■ The first element in Bunevith's *prima facie* case is the allegation of disability. An individual is "disabled" within the meaning of the ADA if that individual suffers from a physical or mental impairment that "substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(2)(A). The impairment limiting a major life activity is shown if the individual has a record of such an impairment, *id.* at § 12012(2)(B), or if the individual is regarded as having such an impairment. *Id.* at § 12012(2)(C). A mental impairment is defined by ADA regulations as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). "Working" is specifically included as a "major life activity." *Id.* at § 1630.2(i).

To determine whether Bunevith's disability substantially limited his ability to work, the Court must consider 1) the nature and severity of his impairment, 2) the duration or expected duration of his impairment, and 3) the permanent or long-term impact, or the expected permanent long-term impact, of or resulting from his impairment. 29 C.F.R. § 1630.2(j)(2).

In support of his allegation that he was disabled, Bunevith has proffered 1) the allegations in his unverified complaint, 2) an April 8, 1993 "Outpatient Treatment Update Report" ("OTUR") issued by a Licensed Social Worker, and 3) the unsworn letter from his physician. The OTUR clearly indicates that Bunevith had not received treatment for his condition prior to April 8, 1993. According to the unsworn letter from his physician, Bunevith's treatment for his impairment ended on June 23, 1993.

Although the evidence submitted by Bunevith, when viewed in the light most favorable to him, arguably demonstrates that he was impaired between April 8, 1993, and June 23, 1993, Bunevith has not submitted sufficient evidence to show that his impairment substantially affected his ability to work, and thus he cannot demonstrate that his impairment constituted a disability within the meaning of the ADA. Specifically, other than an ambiguous doctor's note describing his impairment a "major depressive disorder," with respect to such alleged impairment, Bunevith has failed to submit any evidence of 1) its nature or severity, 2) its duration or expected duration, or 3) its expected long-term impact. By failing to proffer sufficient evidence of his alleged impairment, Bunevith has failed to satisfy the first element of his *prima facie* case.

### b. *Bunevith's qualification to perform the essential functions of his employment*

■ To establish the second element in his *prima facie* case, Bunevith must allege that he was qualified to perform the essential functions of his employment, with or without reasonable accommodation. He asserts that his four-year tenure as store manager is

evidence of his qualification to serve in that capacity, and he has submitted two "Employee Counseling Cards" denoting above average or outstanding job performance from July 1988 to July 1992.

CVS asserts that Bunevith is unable to demonstrate that he could carry out the essential function of "effective management of store employees." The ADA does not list specific essential functions, but the employer's judgment regarding what functions of a job are essential is given deferential consideration. 42 U.S.C. § 12111(8). Although CVS is clearly correct in considering the management of store employees to be an essential function of a store manager within Section 12111(8), the evidence offered by Bunevith of his qualification to serve as store manager is adequate to establish the second element of his *prima facie* claim of employment discrimination.

c. *Bunevith's discharge and replacement*

■ Although Bunevith has submitted evidence showing that he was discharged on July 28, 1993, neither party has submitted evidence regarding his replacement. Bunevith has therefore failed to establish the fourth element of his *prima facie* case.

2. *CVS' legitimate reason for terminating Bunevith*

■ Although our consideration of CVS' motion need go no further, for the sake of full consideration of the issues presented by the parties, we turn to the remaining steps of the *McDonnell Douglas* framework. Assuming, *arguendo*, that Bunevith had established a *prima facie* case of discrimination under the second step of the *McDonnell Douglas* outline, the burden would shift to CVS to articulate a legitimate, non-discriminatory reason for his termination. *Udo*, 54 F.3d at 12. CVS states that Bunevith was terminated for repeated violations of CVS' sexual harassment policies. In support of that assertion, CVS proffers four affidavits attesting to Bunevith's conduct toward several female employees under his supervision. CVS maintains that it had an affirmative duty to protect the health and safety of its employees and has clearly offered sufficient evidence of a legitimate, compelling, and non-discriminatory reason for Bunevith's termination. CVS has therefore satisfied step two of the *McDonnell Douglas* approach.

3. *Bunevith's evidence rebutting CVS' legitimate reason for his termination*

■ Under the final step of the *McDonnell Douglas* framework, once CVS articulates a legitimate, non-discriminatory reason for Bunevith's termination, assuming that Bunevith had presented a *prima facie* case, he must introduce evidence sufficient to support findings that 1) CVS' articulated reason for his termination was a pretext, and 2) the true reason for the termination was discriminatory. *Udo*, 54 F.3d at 13. In order to survive a motion for summary judgment, therefore, Bunevith must proffer evidence which would allow a jury to find that CVS' articulated reason for his termination was a pretext for discrimination based upon his claimed disability.

Viewing the evidence in the light most favorable to Bunevith, CVS became aware of his impairment on April 25, 1993. On May 27, 1993, Bunevith was demoted to assistant manager. On July 12, 1993, Bunevith's supervisor entered a statement into Bunevith's personnel file indicating that CVS was uncertain whether Bunevith was "capable [and] willing to once again take the responsibilities of running a store." Other than Bunevith's demotion and the subsequent entry in his personnel file, there is no evidence that Bunevith was terminated for any reason other than his repeated acts of sexual harassment.

The facts do not support even an inference that Bunevith's termination was a pretext for discrimination. Although Bunevith was demoted, his salary remained the same, and his re-promotion was conditioned only on his ability to prove that he could once again perform as a manager. Furthermore, the statement entered into Bunevith's personnel file is ambiguous, and makes no reference to his alleged disability.

CVS argues persuasively that it had no reason to know that Bunevith's impairment was so substantial that it constituted a disability. Indeed, Bunevith has submitted no evidence to this Court indicating that he

suffered from a disability. CVS had access to the same paltry documentation of Bunevith's impairment that was made available to this Court. The unsworn statement from Bunevith's physician indicating that he suffered from a "major depressive disorder" is inadequate to show the existence of a disability, and his unsworn letter reporting treatment of an impairment until June 23, 1993, indicates that Bunevith was not impaired thereafter. Because CVS did not know that Bunevith was disabled, his termination for repeated acts of sexual harassment could not have been a pretext for discrimination based upon a disability.

Bunevith has thus failed to satisfy the third step of the *McDonnell Douglas* framework, because he has not presented evidence that would enable a rational jury to find that his termination due to sexual harassment was a pretext for discrimination based on his alleged disability.

## IV. CONCLUSION

Bunevith, in failing to establish a *prima facie* case of employment discrimination, has not overcome the first hurdle of the *McDonnell Douglas* analysis. Even if Bunevith had established a *prima facie* case of employment discrimination, CVS, in showing a legitimate, non-discriminatory reason for terminating Bunevith, would have required him to attempt the third hurdle of the *McDonnell Douglas* framework.

At that stage of *McDonnell Douglas,* although Bunevith has produced evidence that CVS knew of his impairment before he was terminated, he has not produced evidence that CVS knew he was disabled at the time he was terminated. Nor has Bunevith submitted evidence that CVS knew that he suffered from an impairment which qualified as a disability within 42 U.S.C. § 12112(a). Those failures compel the conclusion that the reason given by CVS for Bunevith's termination, i.e. repeated acts of sexual harassment, was not a pretext to terminate him because of his disability.

Because Bunevith has failed to establish a prima facie case of employment discrimination, and because he has not presented evidence that would enable a rational jury to find that his termination for sexual harassment was a pretext for discrimination based on his alleged disability, CVS' motion for summary judgment is ALLOWED.

SO ORDERED.