Susan ABDO

v.

### UNIVERSITY OF VERMONT

No. 1:02–CV–12.

United States District Court, D. Vermont.

April 28, 2003.

Stacey Fran Joroff, Vermont Legal Aid, Inc., St. Johnsbury, VT, Eileen Morris Blackwood, Blackwood Associates, PC, Burlington, VT, for Susan Abdo, plaintiff.

Jeffrey James Nolan, Amy M. McLaughlin, Dinse, Knapp & McAndrew, P.C., Burlington, VT, for University of Vermont and State Agricultural College, defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MURTHA, District Judge.

In 1999, Plaintiff, Susan Abdo, was enrolled in graduate-level courses at the University of Vermont ("UVM"), the Defendant in this action. Following UVM's alleged failure to provide reasonable accommodations under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* ("Rehabilitation Act"), and Vermont's Public Accommodations Act, 9 V.S.A. § 4500 *et seq.* ("PAA"), Abdo sued for violations of these statutes and breach of contract. UVM has now moved for summary judgment.

In a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party, with all reasonable inferences to be drawn in her favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

During the course of this litigation, UVM has raised a number of defenses requiring resolution of contested factual issues. For purposes of summary judgment, however, UVM has raised two discrete issues turning on the adequacy of Abdo's documentation of her disability, and UVM's compliance with its own, internal policies. The facts underlying these two issues are not in dispute and are easily set forth, construed in the light most favorable to Abdo.

## BACKGROUND

In 1999, Abdo enrolled in graduate classes at UVM. At that time, she was suffering from severe and persistent physical disabilities as a result of one or more car accidents. While Abdo was able to attend class, her disabilities made it difficult for her to sit for long periods of time without rest. Neck and jaw injuries also made it painful for her to talk for more than a limited amount every day. Abdo sought accommodations from UVM for these disabilities.

UVM has a formal system in place for dealing with accommodation requests from disabled students. Outlines of UVM's policies are found in several different publications available to students. A document entitled "The Americans with Disabilities Act of 1999—and—Section 504 of the Rehabilitation Act—A guide for students, faculty and staff at the University of Vermont" is representative. That document provides:

> If you believe that you have a disability which might affect your academic performance at UVM and feel you may need reasonable accommodation or aux-

iliary aids and services, you should visit the appropriate certifying office to determine if you are a qualified individual with a disability under the ADA or Section 504:

- physical disabilities, learning disabilities and attention deficit disorders (ADD) are certified by the Office of Specialized Student Services . . . .
- psychological disabilities are certified by the Counseling and Testing Center . . . .
- severe and ongoing medical problems and alcoholism and/or drug recovery are certified by the Student Health Center . . . .

Other documents' descriptions of UVM's accommodation procedures are consistent with this guidance. *See* Policies and Procedures for Students with Disabilities; 1998–1999 The Cat's Tail; Graduate Catalogue 1998–2000.

In order to seek accommodation from UVM, Abdo approached John Capriotti in UVM's Office of Specialized Student Services ("OSSS") in January 1999. At that time, Abdo was not familiar with UVM's procedures for seeking accommodations and had made no effort to familiarize herself with them. (Abdo Depo. at 44–45). Capriotti informed her that she would need to supply a letter or other documentation in support of her claimed disability.

Abdo obtained a letter from her treating physician, Dr. Carol Talley, on January 25, 1999. In her letter, Dr. Talley wrote that Abdo "has chronic pain and deconditioning and struggles with low back pain, neck pain and jaw injuries which have required multiple orthodontic and dental interventions. She is also status post abdominal surgeries for removal of sutures that were

left." Because of these medical problems, Dr. Talley listed four specific accommodations that would help Abdo complete her course work: (1) a 45–minute sitting limitation; (2) need for an hour-long break following two to three hours of upright activities; (3) unspecified limitations on the amount she can talk during the day; and (4) need to park close to the site of her class work.[1]

After Abdo presented Capriotti with a copy of Dr. Talley's letter, Capriotti permitted her to use the lounge attached to his office to rest during the day. Abdo found this inadequate, however, because students and professors frequently passed through the lounge. Capriotti also provided her with names of other people at UVM who might be able to find an appropriate place for her to rest. After several weeks of seeking unsuccessfully to meet Abdo's needs, Capriotti informed Abdo that OSSS did not have responsibility for accommodating students with medical problems and that she should approach the Student Health Clinic ("SHC") for a place to rest.

Abdo talked to Karol Josselyn at SHC who told her that SHC did not have an appropriate place for her to rest, and to contact Residential Life. Josselyn never told Abdo there was a formal process at UVM of being certified as having a disability, nor did she discuss other accommodations with Abdo at that time.

In early March 1999, Residential Life provided Abdo with access to an apartment on campus to rest and to use for the night when she felt she could not drive home. According to Abdo, "it was exactly what I needed." (Abdo Depo. at 35). Abdo, however, believes her school work

---

1. On March 1, 1999, Dr. Talley submitted a second letter documenting Abdo's need for an additional accommodation, describing limitations on her endurance for driving necessitat- ing occasional "accommodations overnight," and stating that surgical procedures required Abdo to be absent from class for two weeks.

and grades suffered as a result of a lack of other accommodations.

Abdo did not immediately re-enroll at the end of the semester in 1999 but waited until the fall of 2001. At that time, she approached SHC for accommodations for her disability and was informed that she needed to provide additional information and documentation before she could be certified as having a disability, pursuant to school policies. In particular, she was asked to provide "specific diagnosis and functional limitations that are relevant to these requested accommodations." (Letter from Josselyn to Abdo of Sept. 25, 2001). In her letter, Josselyn listed the following requirements:

1. Documentation must come from a licensed professional, qualified in the appropriate specialty area.

2. Documentation must include diagnostic information and explanation of the current manifestations or functional limitations of the condition. It must be thorough enough to demonstrate if a major life activity is substantially limited, i.e. the extent, duration, and impact of the condition.

3. Documentation of a chronic or progressive condition must include the degree and range of functioning. (Id.)

In response, Abdo submitted an additional letter from a treating physician, Dr. Dale Stafford. He noted, in relevant part:

[Susan Abdo] has chronic pain and deconditioning, and struggles with low back pain, neck pain, and jaw injuries, which have required lengthy and multiple orthodontic and dental interventions

. . . .

Susan has sitting limitations. When using a chair with orthopedic support and a flexible back, she is able to sit for a class duration of an hour to an hour and a half, but during that period of time may need to stand and change positions.

Her endurance has improved over time. Currently, she is able to manage approximately three hours of upright activities, but during that time may need to have an hour of time to lie down and sleep up to an hour.

Due to her mouth and jaw injuries and significant muscle spasm in that area, she is limited in how much time during the day she can talk. She currently has some orthodontic appliances. After about a 30 minute conversation, pain in her jaw and face increases significantly. (Letter from Stafford to Josselyn of Oct. 26, 2001).

UVM denied Abdo's request for accommodations, finding the documentation inadequate to support her claim she was disabled. In response, Abdo filed this suit, arguing UVM's determination violated the ADA, the Rehabilitation Act, and the PAA. She also charged that UVM was in breach of contract under Vermont law.[2] Specifically, Abdo claims that UVM failed to provide her with reasonable accommodations, imposed an undue burden by requiring her to advocate with multiple offices to obtain accommodations, delayed accommodation decisions for extended periods of time, and penalized her in class for her disabilities.

UVM presumably rejects each of these contentions but in its present summary judgment motion only argues the documentation Abdo provided was insufficient as a matter of law to support her request for accommodation, and UVM was not in breach of contract because it complied with all of its internal policies.

---

**2.** Abdo's complaint included additional claims for negligence and promissory estop-pel. Abdo has withdrawn those claims and they will not be considered further.

## DISCUSSION

### A. Statutory Claims

■ For purposes of the present motion, Abdo's claims under the ADA, the Rehabilitation Act, and the PAA may all be treated together. *See Guckenberger v. Boston Univ.*, 974 F.Supp. 106, 133 (D.Mass.1997) (ADA and Rehabilitation Act "are frequently read in sync"); 9 V.S.A. § 4500(a) (describing PAA legal standards and duties are "to be construed so as to be consistent with the Americans with Disabilities Act"); *Hodgdon v. Mt. Mansfield Co., Inc.*, 160 Vt. 150, 165, 624 A.2d 1122 (1992).

The parties agree that UVM is subject to the provisions of the ADA which provide, in relevant part:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*See also* 29 U.S.C. § 794(a) (Rehabilitation Act); 9 V.S.A. § 4502(b)(PAA).

■ To prevail under these statutes, Abdo must show: (1) she is disabled; (2) UVM is covered by the statute and had notice of her disability; (3) her requests for accommodation are reasonable; and (4) those requests have been denied. *See Stone v. City of Mt. Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997). Public facilities, like UVM, must make "reasonable modifications" to their practices and policies to accommodate disabled persons under the ADA. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). In the present motion, UVM argues that Abdo failed to provide sufficient evidence she is disabled within the meaning of the ADA and has therefore failed to make out her *prima facie* case.

Under the ADA, the term "disability" means a "physical or mental impairment which substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A); *see also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 187, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (citing 42 U.S.C. § 12103(2)(A)). Relevant to this case, major life activities include walking, speaking, and working. *See* 34 C.F.R. 104.3(j)(2)(ii). Importantly, the ADA does not define disabilities in terms of specific medical conditions but instead by the effect of a physical or mental condition on an individual and her ability to participate in major life activities.

■ In this case, UVM requested specific, detailed information from Abdo as evidence of her disability, including "diagnostic information and [an] explanation of the current manifestations or functional limitations of the condition" that is "thorough enough to demonstrate if a major life activity is substantially limited." (Letter from Josselyn to Abdo of Sept. 25, 2001). The request for supporting documentation was certainly appropriate. UVM does not have to accept any statement by a student, or even a medical professional, as to the disability of a student but may impose certain requirements regarding the nature of the evidence demonstrating the disability. *See Guckenberger*, 974 F.Supp. at 135 (citing cases). But, "under federal law, a university cannot impose ... documentation criteria that unnecessarily screen out or tend to screen out the truly disabled." *Id.* In other words, "a university is prevented from employing unnecessarily burdensome proof-of-disability criteria that preclude or unnecessarily discourage individuals with disabilities from establishing that they are entitled to reasonable accommodation." *Id.*

There is no doubt the information UVM requested is consistent with some courts' interpretations of the ADA. A number of courts have, in fact, permitted employers to reject accommodation requests by employees where the employees failed to provide specific medical diagnoses of their conditions. *See Maulding v. Sullivan,* 961 F.2d 694, 699 (8th Cir.1992); *Bunevith v. CVS/Pharm.,* 925 F.Supp. 89, 93 (D.Mass. 1996) (granting summary judgment to employer on grounds employee failed to submit evidence regarding his medical condition including "1) its nature or severity, 2) its duration or expected duration, or 3) its expected long-term impact").

█ Equally plain, however, is how context dependent the documentation requirements are across the body of ADA cases. Medical evidence in support of a claimed disability is not necessarily legally insufficient because it fails to identify the precise medical diagnosis of the disability or set forth a detailed prognosis. *See Weigert v. Georgetown Univ.,* 120 F.Supp.2d 1, 8–9 (D.D.C.2000) (doctor's note indicating accommodation requested, without more, "could constitute medical evidence demonstrating to her employer that she had a physical limitation."). As one Court has emphatically noted, "It is the impairment itself—and not the medical diagnoses of the condition—that determines whether a particular ailment is an impairment under the Act." *Scarborough v. Natsios,* 190 F.Supp.2d 5, 20 (D.D.C.2002); *cf. also Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. 681 ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of impairment. Instead, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.") (internal quotation marks and citations omitted). In other words, the focus of the ADA's inquiry is not on the diagnosis itself—indeed, a diagnosis alone is insufficient to establish a disability—but is instead on the extent of the limitations caused by the disability.

█ The letters submitted by Abdo's physicians are not legally insufficient to demonstrate that Abdo was, in fact, disabled within the meaning of the ADA, as UVM claims. The letters' failure to recite a specific diagnosis is not necessarily fatal to her claiming a disability so long as the letters adequately set forth the functional limitations imposed by her disability. While it no doubt would be insufficient for a doctor simply to recite the need for a student's specific accommodations, the doctors' letters here included much more information. They identified the cause of the disability as a car accident or accidents; the disability was chronic; and the limitations imposed by the disability on Abdo's stamina to sit, work upright, and talk for extended periods. This is at least adequate to survive summary judgment.

A contrary holding would elevate the form of doctors' letters supporting requests for accommodation over their substance. It would be inconsistent with the broad remedial goals of the ADA to find Abdo's doctors' letters insufficient simply for failure to recite a precise medical diagnosis where they adequately set forth the effect of Abdo's disability on several of her major life activities. *See Castellano v. City of New York,* 142 F.3d 58, 68 (2d Cir.1998) (identifying ADA's remedial goals).

█ Abdo also argues the lack of a single, centralized office for seeking accommodation effectively prevented her from obtaining accommodation when she first sought it in 1999. This argument is without merit. Under the ADA, UVM is pro-

hibited from imposing eligibility or screening requirements that "screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(2)(A)(i).

UVM does not violate the ADA by delegating responsibility for accommodation requests to different, specialized offices. As discussed more fully in the context of Abdo's breach of contract claim, the record is plain that any hardship Abdo had in 1999 seeking accommodation arose from her own failure to follow UVM's clearly defined procedures. Therefore, Abdo shall not be permitted to challenge this aspect of UVM's conduct.

### B. *Breach of Contract*

██ Abdo's complaint includes a claim for breach of contract, alleging UVM did not follow its own internal policies with regard to evaluating her accommodation. In its present motion, UVM argues it did not breach any contractual obligations and any failure to provide Abdo's 1999 accommodation request with adequate consideration resulted from Abdo seeking accommodation from the wrong UVM office. Under UVM's promulgated policies, accommodation requests based on medical conditions, as opposed to physical disabilities, are evaluated by the SHC and the latter by the OSSS. UVM argues that, by going to the OSSS in 1999 instead of the SHC, Abdo approached the wrong office seeking accommodation.

Assuming for purposes of this motion that UVM's publications and policy pamphlets define the terms of its contractual obligations, *see Fellheimer v. Middlebury Coll.*, 869 F.Supp. 238, 242 (D.Vt.1994), Abdo has failed to present any evidence that UVM breached its contract. In fact, when she enrolled in 1999, Abdo failed to approach the appropriate certifying office as required by UVM's policies. The relevant UVM policy states unambiguously that the SHC, and not the OSSS, "certifies and coordinates services for students with ongoing medical conditions." When Abdo did contact the SHC in 1999 it was, by her own admission, only to ask for a place to rest between classes. (Abdo Depo. at 33).

In fact, it appears that Abdo was less than diligent in pursuing her accommodation claims in 1999. When asked about her familiarity with UVM policies and procedures for accommodating disabilities, Abdo testified she did not look at the relevant materials until March 1999, three months after she enrolled. Asked why she had not looked at them earlier, she testified: "I had attended the Community College of Vermont. There was a process to acquire needed accommodations, and I was completely successful. And then I went to Syracuse University, and I followed the same process, and asked for accommodations, and I was completely successful with it. And I figured I had experience in asking for accommodations, and I would go through the same process." (Abdo. Depo. at 44–45). UVM did not breach its contractual obligations by failing to follow other schools' accommodation procedures. There is no genuine dispute that UVM did follow its own procedures and, on these facts, there is no basis for Abdo's breach of contract claim.

### CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment on Plaintiff's ADA, Rehabilitation Act, and PAA claims is DENIED. Defendant's

motion for summary judgment on Plaintiff's breach of contract claims is GRANTED. The parties' request for oral argument is DENIED as moot.

SO ORDERED.