### State of Vermont, et al. v. G.S. Blodgett Company

[656 A.2d 984]

No. 94-004

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed January 20, 1995

*Jeffrey L. Amestoy,* Attorney General, and *Seth A. Steinzor,* Assistant Attorney General, Montpelier, for Plaintiff-Appellant State of Vermont.

*John D. Shullenberger* of *Mickenberg, Dunn, Sirotkin & Dorsch,* Burlington, for Plaintiff-Appellant Beauchemin.

*Robert B. Hemley* and *Lucy T. Brown* of *Gravel and Shea,* and *Christopher R. Gannon,* Burlington, for Defendant-Appellee.

**Allen, C.J.** Plaintiffs, Joan Beauchemin and the State of Vermont, appeal from summary judgment dismissing their handicapped discrimination claim against Beauchemin's former employer, defendant G.S. Blodgett Company. We affirm.

Defendant manufactures ovens at its Burlington, Vermont facility where Beauchemin was employed full-time as a general helper from 1978 until 1983. According to defendant's written job description, a general helper is a floater whose responsibilities change with the demands of the factory. Beauchemin, who was one of approximately eight general helpers, did welding, cut insulation, worked on drill presses, and assembled, tested and repaired parts in various departments.

During the latter part of her tenure, Beauchemin's ability to perform the full range of routine tasks was substantially and adversely affected by multiple sclerosis. Beauchemin's work assignments were restructured to accommodate her deteriorating condition. She spent the majority of her time in the wiring department, sorting and cutting various wires with a large cutting machine. The wires were then affixed to motor mounts for installation in the ovens. Defendant provided Beauchemin with a stool so she would not have to stand and had other employees lift the wire spools. In November 1983, Beauchemin was placed on medical leave of absence.

Beauchemin was diagnosed with relapsing remitting multiple sclerosis. As explained by her neurologists, the disease is unpredictable and the symptoms vary in intensity and duration. Beauchemin suffered from muscle weakness, fatigue, incontinence, and slurred speech. Her ability to concentrate, balance, lift heavy objects or stand for extended periods of time was significantly impaired. She responded well to medical treatment and was able to manage some symptoms by controlling the room climate and resting intermittently.

Plaintiffs acknowledged, however, that periods of alleviation were interspersed with periods of exacerbation which, at worst, required hospitalization.

Shortly after Beauchemin went on leave, defendant introduced a new oven, which required defendant to redesign its production regimen. To save space, improve efficiencies, and reduce costs, defendant hired two independent contractors to perform the wiring and motor mount operations. One of the contractors was a sheltered workshop employing disabled workers. The contractors picked up supplies from defendant, performed the work as necessary, and returned the finished parts. Each contractor supplied the needed machines, tools, supervisory staff and insurance coverage.

In February 1984, Beauchemin contacted personnel manager, Robert Morris, about reentry and retraining. Morris told Beauchemin that reentry would depend on her physical condition, and he would rely heavily on her physician's reports in making judgments about her abilities. From 1984 through 1985, Beauchemin regularly submitted her doctor's reports to Morris. In March 1984, her treating neurologist wrote Morris, concluding that Beauchemin's "rapid progression of multiple sclerosis presents a sufficiently poor prognosis as to make further regular employment unlikely." Morris encouraged Beauchemin to get a second opinion. Beauchemin began diagnostic and therapeutic treatment at the University Health Center of Vermont in May 1984.

By her own admission and her doctors' advice, she could not work at all during 1984 and 1985. While her doctors noted improvement in late 1985, they opined that she was unable to perform the usual duties of her occupation, but could work approximately four hours per day in a sedentary position. They specifically advised against work involving lifting, frequent walking, prolonged standing, or any situation requiring intense concentration, such as heights, with loud noise or with dangerous machinery. Early in 1986, her doctors reported that Beauchemin was stable and asymptomatic.

In April 1986, Beauchemin renewed discussions with defendant about the possibility of being reinstated. She spoke with several managers, including James Clucas, plant manager, about working at home because she could not tolerate the factory environment. She suggested relocating the nine foot by four foot wiring machine to her garage. Beauchemin hypothesized that she could do wiring in her insulated garage because it would provide a climate controlled environment and opportunities to rest. She suggested this idea after

learning that most of the work that she had been doing prior to her medical leave had been contracted to a sheltered workshop. Shortly after discussing this option with defendant, Beauchemin received a letter from defendant notifying her that her health benefits would be terminated because her absence from work would exceed two and one-half years.

Beauchemin called Clucas and reiterated her interest in performing wiring in her garage. She followed up with a letter requesting that she be reinstated in her old capacity (as a wirer), but at home. She noted that "I am able to do the type of work that I was primarily engaged in prior to my illness. However, I can no longer tolerate the environment of the plant given the lack of climate control and the danger that fatigue or loss of balance could place myself and/or others in danger." Beauchemin also recommended that Clucas contact a vocational rehabilitation expert to assist in fashioning a solution. Clucas did not review Beauchemin's medical records or contact the vocational expert. He did, however, discuss with several Blodgett managers the viability of performing the wiring function in Beauchemin's garage. Because of safety, monetary, logistical and legal issues, they decided it was impractical. At this time, there was only one general helper still employed by Blodgett. That person was not doing any wiring or motor mount assembly because of the subcontract arrangement.

Beauchemin, with the State of Vermont, filed a complaint alleging that defendant discriminated against Beauchemin on the basis of her handicap in violation of § 495(a)(1) of Vermont's Fair Employment Practices Act (VFEPA), 21 V.S.A. §§ 495-496. Plaintiffs maintained that Beauchemin was qualified to work as a general helper with reasonable accommodations, and that defendant was obligated to provide her with a reasonable accommodation when she requested reemployment in April 1986. Plaintiffs sought money damages, including civil fines, and Beauchemin's reinstatement in her former position.

Following extensive discovery, defendant successfully moved for summary judgment. The court concluded that plaintiffs had failed to establish that Beauchemin could perform the essential functions of general helper because she could not meet its physical demands, and that plaintiffs had failed to present evidence that a particular accommodation was reasonable, while defendant had satisfied its burden of proving that setting up a mini-factory in Beauchemin's garage was not a reasonable accommodation. In reaching its conclu-

sions, the court relied on sworn statements Beauchemin made on her application for Social Security benefits.[1]

On appeal, plaintiffs argue that summary judgment was improper because the trial court ignored material evidentiary conflicts in determining that Beauchemin was not a qualified handicapped individual. Plaintiffs also argue that, regardless of the outcome on the merits, defendant should be liable because it failed to conduct an adequate individualized inquiry into Beauchemin's qualifications prior to making its adverse employment decision.

The standard of review of a motion for summary judgment is the same as that used by the trial court. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 158-59, 624 A.2d 1122, 1127 (1992). Summary judgment is appropriate when the moving party has demonstrated that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. V.R.C.P. 56(c); *Kelly v. Town of Barnard*, 155 Vt. 296, 299, 583 A.2d 614, 616 (1990). In determining whether a material fact exists, the opposing party is entitled to all reasonable doubts. *Hodgdon*, 160 Vt. at 158-59, 624 A.2d at 1127. The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and it is able to demonstrate sufficient evidence to support a prima facie case. *Id.* at 323. If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law. *Id.*

■ VFEPA prohibits discrimination in employment against "a qualified handicapped individual." 21 V.S.A. § 495(a)(1). The handicapped discrimination provisions under VFEPA are patterned after § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *Hodgdon*, 160 Vt. at 165, 624 A.2d at 1130. Therefore, we look to federal case law to guide our interpretation, the allocations of burdens and standards of proof. See *id.* To establish a claim under VFEPA, plaintiffs must show that Beauchemin is a qualified handicapped individual and was excluded from her position because of her handicap. For purposes of

---

[1] While plaintiff was on disability leave, defendant's insurer required Beauchemin to apply for Social Security benefits which are available to individuals who are totally disabled from working. Beauchemin applied and was denied benefits in 1984. She reapplied in 1989 and was granted benefits for the period beginning 1987. In her application, Beauchemin described, in great detail, the physical demands of her work and her physical capabilities. Beauchemin's doctors' reports were also submitted. These reports described the nature and progress of her disease as well as their opinions regarding Beauchemin's ability to engage in certain kinds of tasks.

this motion, defendant conceded that Beauchemin was a handicapped individual and that it denied her reinstatement because she was unable to do the work. It further acknowledged that Beauchemin's affliction with multiple sclerosis was directly responsible for her inability. The remaining issue was whether Beauchemin is a qualified handicapped individual.

A qualified handicapped individual is defined as "an individual with a handicap who is capable of performing the essential functions of the job . . . for which [s]he is being considered with reasonable accommodation to [her] handicap." 21 V.S.A. § 495d(6). Determining whether Beauchemin satisfies this definition requires two distinct determinations: what constitutes the essential functions of the job and what constitutes reasonable accommodation. *Packard v. Gordon*, 148 Vt. 579, 583, 537 A.2d 140, 142 (1987). As the trial court correctly stated, it is plaintiffs' burden to prove that Beauchemin is a qualified handicapped individual. *Gilbert v. Frank*, 949 F.2d 637, 640 (2d Cir. 1991). Demonstrating the ability to perform the essential functions of the job with reasonable accommodation is not a heavy burden. It is sufficient for plaintiffs to present evidence as to Beauchemin's individual capabilities to perform the job in question and suggestions for some reasonable assistance or job modification by the employer. *Id.* at 642.

On the issue of reasonable accommodation, plaintiffs maintain that the trial court erroneously required them to demonstrate that the suggested accommodation was reasonable. According to plaintiffs, *Gilbert* suggests that even if their proposed accommodation is not reasonable, because the employer bears the burden of proof on the issue, summary judgment is precluded. Contrary to plaintiffs' interpretation, *Gilbert* specifically explains that plaintiffs, not the employer, have the initial burden on the issue of reasonable accommodation because the term is included in the definition of otherwise qualified. *Id.* Plaintiffs need not raise all possible accommodations, nor prove that a particular accommodation is reasonable; they merely need to produce evidence that a *reasonable* accommodation is possible. See *Arneson v. Heckler*, 879 F.2d 393, 396 (8th Cir. 1989) (emphasis added). Once plaintiffs have made out their prima facie case, the burden shifts to the employer to show that no reasonable accommodation is possible. *Gilbert*, 949 F.2d at 642. Ultimately, the employer must prove an inability to accommodate because the accommodations would substantially alter the nature of the job or

would be unduly burdensome. *Id.* Summary judgment was appropriate because there were no genuine issues of material fact suggesting that Beauchemin was capable of performing the essential functions of a general helper with or without reasonable accommodation.

The essential functions of a job are those that are legitimate and necessary to accomplish the goals of the position. See *Wallace v. Veterans Admin.*, 683 F. Supp. 758, 762 (D. Kan. 1988) (essential functions are legitimate and necessary job related tasks). The work an employee actually performs may be persuasive in establishing the necessity of a particular task. *Pandazides v. Virginia Bd. of Educ.*, 946 F.2d 345, 349 (4th Cir. 1991) (court must look beyond stipulated requirements to what position actually requires). The analysis should focus on the requirements at the time accommodation is requested. See *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 24 (1st Cir. 1991) (whether individual is otherwise qualified depends on program's present requirements).

■ Defendant presented uncontested evidence that a typical general helper assisted in whatever demands arose at its plant and required substantial lifting, bending and walking. In her application for Social Security benefits, Beauchemin also described herself as a "floater" who performed a wide variety of physical tasks. Plaintiffs insist, however, that wiring was the only essential function of Beauchemin's job as a general helper. They point to the fact that Beauchemin's duties immediately before she went on leave were limited to wiring. They also suggest that the fact that wiring was contracted out was evidence that wiring was still necessary to defendant's business when Beauchemin requested reinstatement. Plaintiffs reliance on the wiring contracts is misplaced. When Beauchemin asked for reinstatement, wiring was no longer performed by defendant's employees. Therefore, wiring could not be considered an essential function of the general helper job. *Id.* The undisputed facts establish that the essential functions of the job required the general helper to act as a floater and to perform various physical tasks.

There was also no genuine dispute regarding Beauchemin's ability to meet the physical requirements of the general helper position. Plaintiffs presented no evidence that she was capable of performing physical labor or responding to the changing factory needs. Beauchemin's sworn statements regarding her limited abilities were corroborated by her subsequent admissions and her doctors' reports. Moreover, although plaintiffs suggest that her symptoms could be

controlled, her doctors consistently advised her not to engage in manual labor, such as lifting, bending or walking.

■ Tangentially, plaintiffs challenge the court's reliance on Beauchemin's sworn statements in the Social Security proceeding in determining that she was physically incapable of performing the job. Defendant argues that Beauchemin's sworn statements – that she could not perform the job of general helper – were dispositive on the issue of whether Beauchemin was qualified under 21 V.S.A. § 495(a)(1). Beauchemin's statements cannot be dispositive on the issue of whether she is a qualified individual. They were made without regard for the essential functions of the job and whether reasonable accommodations would enable her to perform the job. They are, however, probative of her job-related capabilities and the severity of her handicap. See *Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir. 1992), and appropriately considered for purposes of summary judgment. *Pierce v. Riggs*, 149 Vt. 136, 138, 540 A.2d 655, 656 (1987).

■ Next, the court was required to consider whether, with reasonable accommodations, she would be able to perform the essential functions. *Gilbert*, 949 F.2d at 642. Plaintiffs failed to present evidence that a reasonable accommodation was possible. An accommodation is unreasonable if it would necessitate modification or elimination of the essential nature of the job. *Id.* Plaintiffs' proposals envisioned eliminating all of the present functions of a general helper and reintroducing an obsolete employee function – wiring.[2] Such proposals were tantamount to creating a new position. VFEPA does not contemplate such a result. See 21 V.S.A. 495d(12); *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n.19 (1987) (employer not required to find another job for employee who is not qualified for job she was doing); *Chiari v. City of League City*, 920 F.2d 311, 318 (5th Cir. 1991) (no duty to create new part-time position). In light of the undisputed evidence, Beauchemin was not a qualified handicapped individual within the meaning of § 495d(6); therefore, defendant was entitled to judgment as a matter of law.

---

[2] In addition to suggesting that defendant install a wiring machine in her garage, plaintiffs also suggested two other possible accommodations that would enable Beauchemin to do wiring. One was to station Beauchemin in a climate controlled isolation booth in the factory. The other suggestion was to install additional fans and heaters throughout the factory to accommodate Beauchemin wherever she was assigned. Both of these suggestions contemplated that Beauchemin would be performing wiring.

■ Plaintiffs' second claim on appeal is that defendant's failure to adequately consider possible accommodations for Beauchemin's handicap was by itself actionable discrimination. While we agree that defendants should conduct an individualized inquiry to determine whether a handicapped employee requires an accommodation in order to advance the goals of § 495d(6), there is no authority imposing liability for failure to conduct an adequate inquiry. Liability attaches only when an employer discriminates against a qualified handicapped individual. 21 V.S.A. § 495(a)(1) (protecting qualified handicapped individuals).

■ ■ The goal of the individualized inquiry is to determine whether an individual is otherwise qualified. *Arline*, 480 U.S. at 287. When an employer concludes that no accommodations are reasonable, as defendant did here, that decision is tantamount to a determination that the employee is not qualified within the meaning of 21 V.S.A. § 495(d)(6). A claim under § 495(a)(1) subjects the employer's decision to judicial review. Evidence that an employer superficially engaged in an inquiry may raise an inference that the employer refused to provide an accommodation without considering whether the employee was otherwise qualified. See, e.g., *Strathie v. Department of Transportation*, 716 F.2d 227, 231 (3d Cir. 1983) (reasonableness of employer's refusal to accommodate subject to judicial review). In contrast, a thorough investigation by an employer may be given greater deference. See *Wynne*, 932 F.2d at 26 (where facts are undisputed, deference to institutional decision that plaintiff was unable to participate effectively in program is appropriate). Regardless of the adequacy of the employer's inquiry, the court still makes the ultimate determination whether the plaintiff is a qualified handicapped individual. *Doe v. New York Univ.*, 666 F.2d 761, 776 (2d Cir. 1981) (court, rather than institution, required to make final determination whether individual is otherwise qualified). Quite often, whether facts alleged support a claim of or defense to discrimination will be purely a legal one. See *Wynne*, 932 F.2d at 26 (judgment precluded only if essential facts were disputed or significant evidence of bad faith or pretext present). If a court concludes, as the court did here, that the plaintiff is not a qualified handicapped individual, there is no actionable claim. 21 V.S.A. § 495(a)(1).

*Affirmed.*