Vermont Superior Court
Filed 12/13/24
Addison Unit

VERMONT SUPERIOR COURT
Addison Unit
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-02766

---

### Vermont Land Trust et al v. Kerry Kurt et al

---

## ENTRY REGARDING MOTION

Title:       Motion for Summary Judgment; Motion to Dismiss; (Motion: 3; 4)
Filer:       Justin B. Barnard; Kerry Kurt
Filed Date:  September 05, 2024; October 14, 2024

This case involves potential violations of a conservation easement held by Vermont Land Trust (VLT), Vermont Housing and Conservation Board (VHCB), and Vermont Agency of Agriculture, Food and Markets (VAAFM) (collectively, "Plaintiffs"). The easement burdens land owned by Kerry Kurt ("Ms. Kurt"), who is a defendant in this action. The other named defendant is Keenan Kurt ("Mr. Kurt"), who is Ms. Kurt's son and also goes by the name "Sovereign-Naan Keenan-Phillip Of-Allodium." Plaintiffs move for summary judgment on their claims that Mr. Kurt's activities (including erection of unauthorized structures) violate the terms of the easement and constitute trespass.

Vermont Rule of Civil Procedure 56(c) (V.R.C.P. 56(c)) sets forth the procedure around responding to motions for summary judgment. To avoid summary judgment, the nonmoving party must "file a paragraph-by-paragraph response, with specific citations to particular parts of materials in the record that the responding party asserts demonstrate a dispute . . . reproduc[ing] each numbered paragraph of the moving party's statement before including the response thereto." V.R.C.P. 56(c)(2). Should a party fail to submit the response required under this sub-part, the rule gives the court the option of "consider[ing] the fact[s] undisputed for the purposes of this motion." V.R.C.P. 56(e)(2).

Ms. Kurt submitted a "Motion to Dismiss" that appears to respond to some of Plaintiffs' claims. The court deems this submission to be an opposition to Plaintiffs' motion for summary judgment but finds Ms. Kurt's filing does not meet the requirements of V.R.C.P. 56(e)(2). Specifically, Ms. Kurt failed to respond to Plaintiffs' Statement of Undisputed Material Facts or point the court to any evidence disputing any of the statements. Thus, the court will treat the facts submitted by Plaintiffs as undisputed for the purposes of this motion. Defendant's Opposition, filed 10/14/2024.

Undisputed Facts

In 1999, VLT conveyed a parcel of property to itself, VHCB, and VAAFM for the purpose of placing a conservation easement on approximately 186 acres of land formerly known as the "Cota Farm Parcel." Plaintiffs' Statement of Undisputed Material Facts ("SUMF"), ¶ 2. The deed for the land notes that the primary purpose of the restriction is to "conserve productive agricultural and forestry lands in order to facilitate active and economically viable farm use of the Protected Property now and in the future." Plaintiffs' Statement of Undisputed Material Facts, Exhibit 1, filed 9/5/24, at 1; SUMF ¶ 8. The restrictions required to achieve this purpose run with the land. SUMF Ex. 1 at 1, SUMF ¶ 6.

As part of achieving this purpose, the easement forbids "residential, commercial, industrial, or mining activities . . . except as specifically permitted under this grant." SUMF Ex. 1 at 2, SUMF ¶ 10. Additionally, the easement states that "no building, structure, or appurtenant facility or improvement shall be constructed, created, installed, erected, or moved onto the Protected Property" except as permitted by Plaintiffs. *Id*. "Permitted uses" include the right to construct, repair, or maintain "non-residential structures" like barns and sugar houses, as long as the buildings are used "exclusively for agricultural and forestry purposes" and have been approved in writing by Plaintiffs. SUMF Ex. 1 at 3, SUMF ¶ 11. The restrictions allow for repair and replacement of buildings within the designated "old farmstead complex," which includes one residential building. Although the deed includes references to a planned new residence, it also details procedures for vacating the old residence and clearly indicates that "Only one residence shall be occupied on the protected property . . . ." SUMF Ex. 1 at 4, SUMF ¶¶ 13.

To enforce these restrictions, the deed lays out a multi-step process designed to encourage voluntary compliance. Plaintiffs have the right to make regular inspections of any part of the property, and they have a "right of reasonable access" in order to do so. Ex. 1 at 4, SUMF ¶ 17. If Plaintiffs become aware of a violation of the terms of the easement, they must give notice to the property owner and demand corrective action. Id. Should this notice fail to encourage the owner to bring the property into compliance with the deed's restrictions, its terms "entitle [Plaintiffs] to bring an action in a court of competent jurisdiction to enforce the terms of this Grant . . . ." Ex. 1 at 5, SUMF ¶ 17.

In 2005, the prior owners of the Cota Farm Parcel (burdened by the 1999 conservation easement) conveyed their property to Ms. Kurt and another individual. SUMF Exhibit 3, submitted 9/5/2024, at 1. That other individual quitclaimed their interest in the land to Ms. Kurt in 2015, making her the sole owner of the property. *Id;* SUMF ¶ 18. In 2017, Ms. Kurt purchased an additional 13 acres of land from the town of Starksboro, which she added to the land burdened by the conservation easement through an amendment to the original deed. SUMF Exhibit 5, submitted 9/5/24, at 1; SUMF ¶¶ 19-20. Prior to the amendment, Ms. Kurt signed a document, called a "Baseline Documentation Report," that attested to the condition of both pieces of property and described the planned land transaction. SUMF Exhibit 6, submitted 9/5/2024. This document affirmed that there were no structures on the land being added to the easement, nor were any activities occurring on her property that were inconsistent with the original deed. SUMF Ex. 6, p. 3, 5, SUMF ¶ 21. Further, she signed the amendment to the original deed, which states that "In all other respects, the Original Grant is unchanged and remains in full force and effect." SUMF Ex. 5, p. 1.

In January 2023, a community member alerted VLT to the possibility of an unauthorized structure being used as a residence on the property. SUMF Exhibit 9, submitted 9/5/2024, at 1. Investigation by Plaintiffs revealed videos of a number of structures that did not comply with the terms of the easement, posted by Mr. Kurt to a YouTube channel. SUMF ¶ 25-26. In March of that year, VLT attempted to notify Ms. Kurt of noncompliance with the terms of the conservation restrictions, as required by the deed. SUMF ¶ 28; SUMF Ex. 1, p. 4. After receiving no response, VLT delivered notice to Ms. Kurt in person on May 6th, 2023. SUMF ¶ 29. On May 7th and 8th, counsel for VLT exchanged emails with Mr. Kurt in which he acknowledged he built the unauthorized structures and asserted that VLT had no rights in the 13-acre lot added to the original deed in 2017. SUMF Exhibit 12, submitted 9/5/2024, at 3; SUMF ¶ 30. Mr. Kurt also acknowledged that he was living on the property; during this exchange, he asserted that when Ms. Kurt purchased the land in 2017, he had "settled said land, [and] lived there permanently for many years . . . ." *Id*.; SUMF ¶31.

Summary Judgment Standards

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A fact is material "'if it might

affect the outcome.'" *In re Estate of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (quoting *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580, 581(2000) (mem.)). Allegations made in opposition to the motion, if supported by admissible evidence, are regarded as true when determining if a genuine issue of material fact exists. *Morisseau v. Hannaford Bros.*, 2016 VT 17, ¶ 12, 201 Vt. 313. The benefit of reasonable doubts and inferences goes to the nonmoving party. *Id*. "'Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact.'" *Boulton v. CLD Consulting Eng'rs*, 175 Vt. 413, 417 (2003) (quoting *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18 (1995)). "'The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case.'" *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 324 (1986)). "'If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law.'" *Washington v. Pierce*, 2005 VT 125, ¶ 17, 179 Vt. 318 (quoting *G.S. Blodgett*, 163 Vt. 175 at 180).

Legal Analysis

In her Opposition, Ms. Kurt advances multiple arguments in support of her contention that Plaintiffs' motion should be denied. Ms. Kurt asserts that the unauthorized structures "preexist the ~13 acre lot easement [she] contracted to conserve in 2017." Opposition at 1. She notes that she was "aware of the established permanent residence upon the ~13 acre lot, which had clearly posted gates and property lines at that time." Id. Ms. Kurt states that the structures have been inaccessible to her since 2017 and that they were established without her permission. Id. Because, in her view, "the structures and occupied territory which existed at the time of the 2017 contract are not mine," she contends that she must be absolved of responsibility for compliance with the terms of the easement ("As I had no structures upon the ~13 acre lot (nor do I now), I had no structures to declare to add to the easement."). Opposition at 1-2. Finally, as an aside, she makes an "allodial" claim of title[1] to the 13 acres on behalf of her son allegedly based in "Article 17 of the 1777 Vermont Constitution." Id. at 2.

Plaintiffs respond that it does not matter who built the structures because Ms. Kurt added the 13 acres to the conservation easement through the amendment she signed in 2017. As the sole owner of the land since that time, she is responsible for current compliance with the easement's restrictions. Reply at 2-3. Plaintiffs interpret Ms. Kurt's assertions that the structures were built without her permission on land that is inaccessible to her as an implied claim of Mr. Kurt's adverse possession of the land. Putting aside an analysis of the specific elements of that claim, Plaintiffs note adverse possession does not apply here because the structures have not existed for the required statutory period (regardless of whether construction began in 2014 or after). Reply p. 3. As such, Ms. Kurt remains the sole owner and is liable for violations of the easement. Id. Even if these structures were built before the easement was amended in 2017, Plaintiffs argue their existence constitutes a current and ongoing violation of the easement's terms. Id.

*Easement Violations*

Vermont courts have repeatedly and consistently held that when an express easement is unambiguous, courts must enforce the terms of the document as written, without the use of rules of construction or extrinsic evidence. *Post & Beam Equities Group, LLC v. Sunne Village Development Prop. Owners Association*, 2015 VT 60, ¶ 56, 199 Vt. 313 (citing *DeGraff v. Burnett*, 2007 VT 95, ¶ 20,

_____

[1] Allodial title is defined as the concept of "real property ownership without a duty of service to, control by, or acknowledgement of any superior landlord." Black's Law Dictionary, allodial title, (12th ed. 2024).

182 Vt. 314). The court, therefore, relies on the 1999 easement, the 2017 amendment to the easement, and the baseline documentation report submitted by VLT and signed by Ms. Kurt to determine whether there has been a violation of the easement. SUMF Ex. 1, filed 9/5/24; SUMF Ex. 2, filed 9/5/24; Plaintiffs' Statement of Undisputed Material Facts Exhibit 6, submitted 9/5/2024.

The terms of the original deed (containing the easement), amendment, and documentation report function as a binding contract. See *Field v. Costa*, 2008 VT 75, ¶ 27, 184 Vt. 230 (Vermont Supreme Court refers to "contractual rights set forth in the conservation easement" in explaining why it refused to find land trust liable for tortious interference with contract). Further, the language of the 2015 quitclaim deed elucidates the property's chain of title and makes clear that Ms. Kurt is the sole owner. SUMF Ex. 3, p. 1.

When Ms. Kurt signed the baseline documentation report and 2017 amendment to the original deed, she attested that: there were "no structures on the land being added [to the easement]"; "there are no activities ongoing on [her] property that are inconsistent with this grant as amended; and "[i]n all other respects [aside from the addition of land], the Original Grant is unchanged and remains in full force and effect." SUMF Ex. 6, p. 3, 5; SUMF Ex. 5, p. 1. As noted above, the original deed forbids residential, commercial, industrial, and mining activities, as well as the erection of structures not approved by the easement holders, in pursuit of the preservation of productive agricultural and forest land. SUMF Ex. 1, p. 1. Additionally, the original deed unambiguously states that "Only one residence shall be occupied on the protected property . . .," a phrase which admits no other possible meaning. *Id*. at 4. Viewing these documents in conjunction, it is clear that Ms. Kurt extended the prohibition on unauthorized activities and structures, as well as the restriction limiting the number of residences, to the 13-acre parcel she purchased in 2017. See *DeGraff*, 2007 VT 95, ¶ 20 (reiterating that deeds must be considered as a whole to arrive at a consistent meaning, and that a deed term is ambiguous only if reasonable people could interpret it differently); SUMF Ex. 1, p. 1, 4; Ex. 5, p. 1; SUMF Ex. 6, p. 3, 5. She also represented that conditions on her property were in conformity with the deed's requirements and took responsibility for ensuring future compliance. *Id*.

Plaintiffs' rights to inspect the property and bring an action for violations of the deed's terms can be discerned from a reading of the plain language of the original deed, but they have additional support in Vermont's statutes. Under the section of the original deed labeled "Enforcement of the Restrictions," the deed gives Plaintiffs the "right of reasonable access to the protected property" in order to "assure compliance with all of the covenants and restrictions herein." SUMF Ex. 1, p. 4.  The deed also "entitle[s] [Plaintiffs] to bring an action in a court of competent jurisdiction to enforce the terms of this Grant" after they give the property owner notice of noncompliance and a chance to correct the violation(s). *Id*. at 5. The statutory counterpart to these deed provisions can be found in 10 V.S.A. §6307, which deals with enforcement of property interests. That section provides that "the State agency, or the qualified organization may institute injunction proceedings to enforce the rights of the . . . State agency, or qualified organization, in accordance with the provisions of this chapter, and **may take all other proceedings as are available to an owner of real property** under the laws of this State to protect and conserve its right or interest." 10 V.S.A. §6307(a) (emphasis added); see 10 V.S.A. §822; *Nelson v. Bacon*, 113 Vt. 161, 172 (1943); J. Jay, *"Enforcing Perpetual Conservation Easements Against Third-Party Violators"*, 32 UCLAJELP 80, 110 (2014); see also 10 VSA §6301a(1), (2) (including VHCB and VAAFM among the list of "State agencies," and listing VLT as a  "qualified organization"). Thus, it is clear Plaintiffs in this case have the authority to bring an action for violation of the easement's terms.

*Trespass*

Under Vermont law, "'A person who intentionally enters or remains upon land in the possession of another **without a privilege to do so** is subject to liability for trespass.'" *Jones v. Hart*, 2021 VT 61, ¶ 66, 215 Vt. 258 (quoting *Harris v. Carbonneau*, 165 Vt. 433, 437 (1996)) (emphasis added). The Vermont Supreme Court expounded on the elements of this offense in *Nesti v. Vermont Agency of Transportation*, noting that "Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another . . . ." *Nesti*, 2023 VT 1, ¶ 24, 217 Vt. 423 (citing *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000) (mem.)). The Court affirmed the principle that a "thing", such as a structure, can be the basis for a trespass claim when it denied the plaintiffs' request for damages in *DeGraff v. Burnett*. That case concerned a deeded easement over two connected lots. When the plaintiffs (who held the easement) claimed damages after the defendant removed improvements made by the plaintiffs on the defendant's lot that exceeded the bounds of their easement, the court declared that "[p]laintiffs committed a trespass by making improvements on [d]efendants' land in support of a right of access they did not enjoy," and denied their request. *DeGraff*, 2007 VT 95, ¶ 34. Further, the Court has found that "[a] permanent injunction may be awarded in response to a continuing trespass because damages are inadequate to address the wrong." *Evans v. Cote*, 2014 VT 104, ¶ 8, 197 Vt. 523. *State v. Gillard* established that recorded easements suffice to establish possession of land for the purpose of imposing criminal liability for trespass in a disputed boundary situation. *State v. Gillard*, 2013 VT 108, ¶¶ 17, 18, 23, 195 Vt. 259. In *Gillard*, individuals who had trespassed on easements held by a utility company claimed they were on the land with the permission of neighboring property owners, who disputed the boundaries of the easements. The court rejected this argument, finding that "jurors had ample evidence from which to determine . . . [the utility] was in rightful possession of the land on which defendants were arrested . . . ." *Id.* ¶ 23. Courts in other states have allowed claims for civil trespass on conservation easements in violation of statutory prohibitions. *Madison Land Conservation Tr., Inc. v. Suppa*, No. CV165037477S, 2018 WL 2599646, at *15 (Conn. Super. Ct. May 4, 2018) (finding Defendant's entry onto land protected by a conservation easement and removal of trees to be a trespass in violation of CT statute).

In addition to Plaintiffs' ability to bring an action for violations of easement terms, Vermont statutory law makes clear that easement holders have a right to exclude others from the property. For example, the law gives qualified organizations the right to "take all other proceedings as are available to an owner of real property . . ." to enforce their rights. 10 V.S.A. §6307(a). The right to exclude others has long been recognized by courts across the United States as "one of the most essential sticks in the bundle of rights that are commonly characterized as property . . . ." *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979). Thus, it follows that because Plaintiffs in this case are in the same position as a landowner, who have the unquestionable right to exclude trespassers, Plaintiffs also possess the right to sue for trespass on their easement.

Mr. Kurt has admitted both that he built the nonconforming structures that are in violation of the conservation restrictions and that he has taken up residence on the land. SUMF Ex. 12, p. 3; SUMF ¶ 30-31. When Ms. Kurt signed the original conservation easement, she accepted the limits on her use of the land as set forth in the easement, which she extended to the 13-acre parcel by amendment.[2] SUMF Ex. 1, p. 1; SUMF Ex. 5, p. 1. Pursuant to those documents, Plaintiffs clearly have the authority to enforce their

---

[2] Although some situations require analysis of multiple factors to discern whether a conveyance creates a property interest that runs with the land, the term as used in the easement here simply means that the conservation restrictions upon this particular piece of land would continue to burden any future owner of the land and are not tied to a particular owner. Black's Law Dictionary, covenant running with the land, (12th ed. 2024); *Federated Retail Holdings, Inc. v. County of Ramsey*, 820 N.W.2d 553, 560 (Minn. 2012); see also *Gardner v. Jefferys*, 2005 VT 56, ¶¶ 6-8, 178 Vt. 594.

rights. These include the right to determine whether a structure falls within the parameters of the easement's stated purposes as well as to limit the number of allowable residences on the land. Coupled with the statutory protections offered for conservation easements, Plaintiffs may pursue injunctive relief and also take steps to enforce their right to exclude. See 10 V.S.A. §6307(a); 10 V.S.A. §822. Mr. Kurt is not the landowner, he does not have any legally cognizable interest in the land, and he is not a party to the conservation easement.

None of the arguments advanced by Defendants thwart Plaintiffs' claims of easement violations and trespass. Ms. Kurt's first argument—that the structures predate the signing of the contract in 2017—has no effect on the current and ongoing violations of the easement which are occurring now. Defendants' Opposition, p. 1. As the sole owner of both parcels, Ms. Kurt's signature on the amendment adding the 13 acres to her property functioned as an attestation that the conditions on her property conformed with the terms of the easement and made her liable for future violations. *Field*, 2008 VT 75, ¶ 27; SUMF Ex. 6, p. 3, 5; SUMF Ex. 5 p. 1. The evidence offered by Plaintiffs leaves no doubt that violations of the easement are occurring. SUMF ¶ 25-26.   She is, therefore, liable for violations of the easement.

*Adverse possession & allodial title*

Adverse possession is the "doctrine by which title to real property is acquired" from another individual "as a result of such use or enjoyment over a specified period of time." Black's Law Dictionary, adverse possession (12th ed. 2024). In Vermont, "[a]dverse possession is a common law cause of action . . . not specifically controlled by Vermont statute, except in the sense that such an action can be brought only after the statute of limitations . . . has run." *Roy v. Woodstock Community Trust, Inc.*, 2013 VT 100A, ¶ 35, 195 Vt. 427. To adversely possess property, an individual must establish possession that is "open, notorious, hostile and continuous throughout the statutory period of fifteen years." *Nesti*, 2023 VT 1, ¶ 18 (quoting *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 13, 183 Vt. 574); *Rowe v. Lavanway*, 2006 VT 47, ¶ 15, 180 Vt. 505; 12 V.S.A. §§501-502.

Ms. Kurt appears to be making an implied claim of adverse possession based on her description of the unauthorized structures as an "established permanent residence" with "clearly posted gates and property lines" that was "established without [her] permission and participation . . . ." Defendants' Opposition, p. 1. These factors strongly resemble the requirements identified by Vermont's courts as necessary to adversely possess property. However, in her Opposition, Ms. Kurt omits what is arguably the most important factor—that the hostile use must continue for a minimum of fifteen years. In correspondence with the court and Plaintiffs' attorney, both Ms. Kurt and Mr. Kurt have represented that he "settled" the property in 2014. SUMF Ex. 12, p. 1; Defendant's "Email re: Motion to Dismiss", filed 10/14/24, p. 1. Regardless of how his occupancy is characterized, Mr. Kurt has not met the statutory period of fifteen years. As a result, Mr. Kurt cannot have adversely possessed the land in question, and no consideration of the other adverse possession factors is required.

Finally, the court finds the claim of "allodial" title put forward by Ms. Kurt on Mr. Kurt's behalf lacks support in caselaw, Vermont's constitution, recognition by any court in this country, or the evidentiary record in this case. Allodial title is defined as the concept of "real property ownership without a duty of service to, control by, or acknowledgement of any superior landlord." Black's Law Dictionary, allodial title, (12th ed. 2024); see also *Reutov v. American Home Mortgage Acceptance Inc.*, No. 3:23-CV-01172-JR, 2024 WL 232315, at *4 (D. Or. Jan. 22, 2024) (quoting *United States v. Miljus*, No. CIV. 06-1832PK, 2007 WL 4287608, at *3 (D. Or. Dec. 3, 2007) ("'Allodial title creates absolute ownership in the title holder, free and clear of any lien, mortgage, rent, service, property tax obligation, or other encumbrance.'"). As Plaintiffs note, courts presented with these claims have "uniformly rejected" them, including this court. *Flores v. Wells Fargo Bank, N.A.*, No. 12-C-1191, 2013 WL 1192767, at *1 (E.D.

Wis. Mar. 22, 2013); *Golrick v. Vermont Department of Taxes*, No. 22-CV-04365 (Vt. Super. Ct., Jan. 11, 2024). Neither the original 1999 deed nor the 2017 amendment contains any language that could be interpreted as describing an "allodial" grant of title. In fact, both deeds make reference to the legally recognized chain of title in establishing ownership of the property at issue. SUMF Ex. 1, p. 1, SUMF Ex. 5, p. 1. Defendants point to no relevant law or evidence in the record, beyond their own assertions, that could possibly undermine the extremely clear language at issue in both the easement and the relevant statutes. As such, the court rejects these claims.

Conclusion

The plain language of the Conservation Easement gives Plaintiffs the authority to determine whether structures built and activities conducted on Ms. Kurt's property comply with the terms of their easement. Their authority to do so, in addition to their authority to bring suit for violations of the easement, derives from current State statutes in addition to the language of the easement. Evidence provided by Plaintiffs establish clear and ongoing violations of the Conservation Easement. Defendants offer no viable defenses to Plaintiffs' claims. Therefore, the court declares that the "Unauthorized Structures" identified in Plaintiffs' Statement of Undisputed Material Facts violate the terms of the easement and grants Plaintiffs' requested injunction. SUMF ¶ 25-26. Defendants must remove all structures from the 13-acre parcel (identified by Plaintiffs in Exhibit 5 to their Statement of Undisputed Material Facts) within 60 days of this order and must not construct any new structures not in compliance with the Conservation Easement. Further, the court declares that Mr. Keenan Kurt, through his unauthorized residence and admitted construction of unauthorized structures upon the 13-acre parcel, has trespassed upon the Conserved Land. Mr. Kurt must vacate his residence on the 13-acre parcel within 30 days of this court's order.

Plaintiffs' motion for summary judgment is granted. To the extent not already determined by the granting of the plaintiffs' motion for summary judgment, defendant Kerry Kurt's motion to dismiss is denied.

Plaintiffs may submit a proposed judgment order within ten days of the date of this order.

**Signed Electronically on December 12, 2024 pursuant to V.R.E.F. 9(d).**

_____
**David Barra**
**Superior Court Judge**